Carol DEAN, appellant,

v.

Floyd GETZ, Dependent Administrator of the Estate of L.A. Dean, Deceased, appellee.

No. 12–97–00138–CV.

Court of Appeals of Texas, Tyler.

April 27, 1998.

---

Kenneth Raney, Tyler, for appellant.

Floyd Getz, Tyler, pro se.

Before RAMEY, C.J., HADDEN, J., and SAM BASS, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

HADDEN, Justice.

Appellant, Carol Dean ("Carol"), appeals an order of the County Court of Smith County, Texas, which denied her application to be appointed successor independent executrix of the estate of L.A. Dean, Deceased ("the estate"). In five points of error, Carol asserts that the trial court erred in failing to appoint her because the L.A. Dean Last Will and Testament ("the will") named her as successor executrix and no conflict of interest was found by the trial court which would disqualify her to be appointed. She further alleges that the evidence was legally and factually insufficient to support the findings of the trial court supporting its judgment. Because Carol has failed to demonstrate that the trial court abused its discretion, we will affirm.

L.A. Dean died testate on May 18, 1991, and was survived by his wife, Barbara Smith Dean ("Barbara"), and four children, Carol, Larry A. Dean ("Larry"), Barbara Connally, and Betty Burton ("Betty"). In his will dated November 22, 1974, L.A. Dean devised to Barbara his interest in their home, his personal effects, and an unspecified amount of his property equal in value to the maximum marital deduction allowable under federal estate tax laws. L.A. Dean also devised the rest and residue of his property to Barbara for life with the power of disposition, and upon her death the remainder was devised to his four children, share and share alike. Included in the will was the following provision appointing the representative of the estate:

> I constitute and appoint my wife, BARBARA SMITH DEAN, Independent Executrix, without bond, of this my Last Will and Testament. In the event of the death, resignation, incapacity, failure or refusal to qualify or serve of my said wife, then I appoint my son, LARRY A. DEAN, to be Independent Executor, without bond. In the event of the death, resignation, incapacity, failure or refusal to qualify or serve of my said son, then I appoint my oldest then surviving child to serve as Independent Executrix or Independent Executor, as the case may be, without bond.

On August 6, 1991, the trial court admitted the will to probate. However, because Barbara renounced her right to be appointed as Independent Executrix, the court appointed L.A. Dean's son, Larry, as the Independent Executor without bond. Approximately five

years later on January 23, 1997, Larry resigned as Independent Executor. Contemporaneously with Larry's resignation, Carol, Barbara, and Betty each filed separate applications for the appointment of a successor representative. Carol, in her application, asserted that she was entitled to be appointed independent successor executrix under the will because she was the oldest then surviving child and was not disqualified by law from serving as such. Barbara asserted in her application that a third-party dependent administrator should be appointed because litigation against the four children was necessary to clear title to the real estate and to complete the administration of the estate. Barbara suggested that the court appoint local attorney Floyd Getz ("Getz") as administrator. In Betty's application, she also contended that a dependent administrator should be appointed because all of the children were disqualified under TEX.PROB.CODE ANN. § 78(e) (Vernon 1980 & Supp.1997). She asserted that:

> ... Each child has an adverse interest to the Estate because they are beneficiaries of a portion of the Estate, the determination of which must be made by the personal representative. Decedent's Will left an unknown portion of property subject to a life estate pursuant to a "pre 1976" marital deduction formula clause. This clause requires expert interpretation in order to properly administrator[sic] and distribute the Estate. Due to the nature and scope of this decision, it creates an inherent conflict of interest between the children, the Estate and the surviving spouse, BARBARA SMITH DEAN, rendering all children unsuitable to serve as a personal representative as defined by Texas Probate Code § 78(e)....

After a hearing on February 4, 1997, the trial court found that there was a continuing need for the administration of the estate, and that the successor executors named in the will were disqualified because they were unsuitable under TEX.PROB.CODE ANN. § 78(e). The court also granted the applications to appoint a third-party dependent administrator, and appointed Getz as the dependent administrator of the estate. At the request

of Carol, the trial court filed findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. L.A. Dean died on May 18, 1991.
2. Larry A. Dean qualified as Independent Executor of the Estate of L.A. Dean, deceased, on August 6, 1991.
3. There still exists a necessity for administration of the estate.
4. The real property owned by L.A. Dean at the time of this death was the community property of L.A. Dean and his wife, Barbara Smith Dean.
5. Under the terms of his will, L.A. Dean devised his interest in the homestead, which is described as a house and five acres, to Barbara Smith Dean.
6. At the time of the death of L.A. Dean, the homestead consisted of a house and approximately twenty acres.
7. Under the terms of the will, Barbara Smith Dean received a life estate in the remaining real property owned by L.A. Dean, at the time of his death.
8. Under the terms of the will, Barbara Smith Dean has the authority to consume the property in which she has a life estate if she, in her sole discretion, determines it necessary for her health, maintenance, or support.
9. Under the terms of the will, the children of L.A. Dean, or the descendants of any deceased child, who survive Barbara Smith Dean own the remainder interest in the real property in which Barbara Smith Dean has a life estate.
10. Under the terms of the will, Barbara Smith Dean received an amount of property equal in value to the maximum marital deduction.
11. The prior Independent Executor had the sole discretion to designate which estate assets were to be distributed in satisfaction of the marital deduction, but no such designation was ever made.
12. L.A. Dean has four living children: Larry A. Dean, Carol Dean, Babs Connally, and Betty Burton.

13. L.A. Dean has no deceased children.

14. Barbara Smith Dean is incapacitated.

15. Margaret L. Hussey, a disinterested third party, was appointed guardian of the estate of Barbara Smith Dean on October 24, 1996.

16. Betty Burton was appointed guardian of the person of Barbara Smith Dean on January 21, 1997.

17. Larry A. Dean tendered his resignation as Independent Executor of the Estate of L.A. Dean in open Court on January 14, 1997.

18. The will of L.A. Dean provides that if Larry A. Dean resigns as Independent Executor, the oldest then surviving child shall be appointed as Successor Independent Executor.

19. Carol Dean is the oldest surviving child of L.A. Dean.

20. Carol Dean filed an Application for Appointment of Successor Independent Executor of the Estate of L.A. Dean, which was contested by Carole W. Clark, attorney/guardian ad litem for Barbara Smith Dean, and Betty Burton, guardian of the person of Barbara Smith Dean.

21. Carol Dean lives in Dripping Springs, Texas.

22. Carol Dean is an employee of a firm located in Austin, Texas that manufactures computer components.

23. Since moving from Tyler, Carol Dean expressed her desire to remain uninvolved in the business affairs of the family.

24. Barbara Smith Dean and the children of L.A. Dean have previously engaged in litigation relating to estate property.

25. The children of L.A. Dean have become estranged.

26. During the administration of the estate, Larry A. Dean as Independent Executor has engaged in numerous questionable financial transactions.

27. For the tax years 1993 through 1995, Larry A. Dean failed to pay the ad valorem taxes assessed against the real property that was the community property of L.A. Dean and Barbara Smith Dean.

28. The estate of L.A. Dean and Barbara Smith Dean each own a separate and distinct cause of action against Larry Dean for his conduct during the administration of the estate.

29. The personal representative of the estate of L.A. Dean and the guardian of the estate of Barbara Smith Dean may be required to file lawsuits against the children of L.A. Dean to clear title to property owned by the estate.

30. Numerous administrative details relating to the partition and distribution of the estate have been neglected by the prior Independent Executor.

31. All of the children of L.A. Dean have a pecuniary interest in the estate.

32. The value of property and the property used to satisfy the pecuniary interest of the children of L.A. Dean will be determined by the future decisions of the personal representative of the estate during the course of completing the administration.

### CONCLUSIONS OF LAW

1. Carol Dean is disqualified from serving as the personal representative of the Estate of L.A. Dean, Deceased under section 78(e) of the Texas Probate Code.

2. Court supervision is necessary to properly complete the remaining administration of this estate.

3. A third party dependent administrator should be appointed as personal representative of the Estate of L.A. Dean, Deceased.

In points of error one, two, four and five, Carol asserts that the trial court erred in appointing Getz instead of her because there was no finding of fact that Carol had a conflict of interest with the estate which would disqualify her under section 78(e) of the Texas Probate Code. It is undisputed that she was the oldest child and was next in line to be appointed successor independent

executrix under the terms of the will. She contends that the provisions of the will should be observed since persons named in the will are statutorily preferred over other classes of prospective administrators or executors. *See* TEX.PROB. CODE ANN. § 77 (Vernon 1980).[1] She argues that the apparent intent of the legislature in enacting section 77 of the Probate Code was to ensure that parties with an interest in the estate would be favored, and that an independent executor named in the will would not be rendered unsuitable simply because he had a good faith claim against the estate or because he was a beneficiary under the will. *See Boyles v. Gresham,* 158 Tex. 158, 309 S.W.2d 50, 53 (Tex.1958).

Carol acknowledges that section 78 modified the statutory scheme contained in section 77 by setting forth prohibitions on the appointment of certain persons. Section 78 provides "No person is qualified to serve as an executor or administrator who is . . . (e) A person whom the court finds unsuitable." TEX.PROB. CODE ANN. § 78(e) (Vernon Supp. 1998). However, Carol contends that an unsuitable person under the statute is a person who has a conflicting claim of ownership of property in the estate separate and distinct from a claim arising from a will. In her response, Barbara asserts that the disqualifying conflict of interest described by Carol is not exclusive. She notes that other conflicts of interests exist among the four children, the estate, and herself, which disqualify Carol as an estate representative and which show that the trial court did not abuse its discretion in appointing Getz as a dependent administrator.

■ The trial court is granted broad discretion in determining whether an individual is suitable to serve as an executor or administrator. *Kay v. Sandler,* 704 S.W.2d 430, 433 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Bays v. Jordan,* 622 S.W.2d 148 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). Our standard of review is an abuse of discretion standard. *Olguin v. Jungman,* 931 S.W.2d 607, 610 (Tex.App.—San Antonio 1996, no writ); *Spies v. Milner,* 928 S.W.2d 317, 319 (Tex.App.—Fort Worth 1996, no writ). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles, that is, whether the court acted arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242.

■ The Probate Code does not define "unsuitable," as used in Section 78(e), and cases interpreting this provision recognize that no comprehensive, discrete explanation exists delineating the attributes which make someone unsuitable under the Probate Code. *Boyles,* 309 S.W.2d at 53; *Olguin,* 931 S.W.2d at 610. It would appear, therefore, that the legislature intended for the trial court to have wide latitude in determining who would be appropriate for the purpose of administering estates. However, several cases provide guidance in determining whether the trial court acted properly in determining that a person was unsuitable to serve. An administrator was disqualified as "unsuitable" when the bank in which he owned stock claimed certain of the estate's assets as its own property. *Haynes v. Clanton,* 257 S.W.2d 789, 792 (Tex.Civ.App.—El Paso 1953, writ dism'd by agr.). An individual was disqualified from serving as administrator of the estates of both a husband and his wife wherein each estate had adverse claims to the same insurance proceeds. *Hitt v. Dumitrov,* 598 S.W.2d 355, 356 (Tex.Civ. App.—Houston [14th Dist.] 1980, no writ). A surviving spouse was found unsuitable because she claimed property of the husband's separate estate as community property.

---

1. Section 77 of the Texas Probate Code sets forth the hierarchy for appointment of administrators, and provides, in pertinent part, as follows:

   Letters testamentary or of administration shall be granted to persons who are qualified to act, in the following order:

   (a) to the person named as executor in the will of the deceased. . . .

   TEX. PROB.CODE ANN. § 77 (Vernon 1980).

*Ayala v. Martinez*, 883 S.W.2d 270 (Tex. App.—Corpus Christi 1994, writ denied). A finding by the trial court that a surviving wife was unsuitable as the representative of her husband's estate was affirmed by this court where her appointment "would be inimical to the interests of the Estate." Inimical was defined as adverse, antagonistic, and hostile. *Formby v. Bradley*, 695 S.W.2d 782, 785 (Tex.App.—Tyler 1985, writ ref'd n.r.e.). Family discord has also been grounds for disqualifying an applicant. *Spies*, 928 S.W.2d at 319. As the court stated in *Hitt*, "each estate should have a representative that will assume the role of an advocate to achieve the best possible advantage for the estate." *Hitt*, 598 S.W.2d at 356. If one has personal interests that are so adverse to those of the estate or the beneficiaries thereof that both cannot be fairly represented by the same person, then that person is not a proper person to administer the estate. *Bays*, 622 S.W.2d at 149; *citing* 18 A.L.R.2d 635 (1951).

■ From our examination of the record, it appears that the trial court did not abuse its discretion in concluding that Carol's interests were adverse to the estate and its beneficiaries for several reasons. First, if Carol were appointed, she would probably have to sue her mother, her brother, her two sisters and herself to determine what portion of the twenty-acre tract L.A. Dean intended to include in the homestead devised to Barbara. This would be necessary in order to carve out that portion of the real estate which should be considered by the estate's representative for dedication to the marital deduction gift. She might also have to sue the prior executor, Larry, since the record reflects that he had engaged in questionable transactions, and since litigation might be necessary to recover misused assets and damages for alleged malfeasance.

Secondly, her interest as a vested remainderman would be adverse to the estate if she assumed the capacity of executrix since the will grants the independent executor the sole discretion to select from the total estate the properties which would constitute the marital deduction gift. The will further provides that the value of the properties selected for the marital deduction gift would be determined solely by the estate representative. These tasks were never performed by the prior executor, Larry, and until the valuation and selection were made, all of the estate properties would be encumbered with a vested remainder owned by the four children. Once that selection was made, however, and the marital deduction property was no longer encumbered by the vested remainder interests, the marital deduction properties would become marketable and could be disposed of by Barbara or the guardian of her estate for her maintenance and support. The will also grants Barbara the power to dispose of those assets which fall into her life estate portion of the estate properties. This power of disposition is exclusive to her and is nondelegable. If Barbara exercises this power, the vested remainder interests of the four children would be extinguished. However, the evidence adduced at the hearing indicated that Barbara was incapacitated, and that her power of disposition of the life estate properties would not likely be exercised. Thus, the life estate properties would probably remain intact until Barbara's death at which time the life estate properties will be distributed to the four children as remaindermen under their father's will. The decisions of the representative regarding valuation and selection, as well as timing, would, therefore, impact the amount of assets ultimately received by Carol from the estate. Carol could delay the valuation and selection process and allow the vested remainder interests to continue to cloud the title to all the estate properties rendering them unmarketable during Barbara's lifetime just as Larry had done. Carol could also place the choice properties of the estate into Barbara's life estate portion, and select the less desirable assets for her marital deduction properties. Although Carol testified that she would be "fair" in carrying out these duties, under these circumstances, the interests of Carol would be inimical to the interests of the estate.

Thirdly, the court's decision was supported by its finding that the family was in discord and had already engaged in other litigation over the estate among themselves. It was suggested that a solution to the family con-

flict would be for the four children to simply convey their vested remainder interests to their mother, Barbara, who could then use and dispose of the properties unencumbered by their interests. However, according to uncontradicted testimony, a transfer of their remainder interests to their mother would generate federal gift tax liabilities and would therefore not be a desirable solution. The finding that Carol was unsuitable was also supported by evidence of her recent expressed desire to remain uninvolved in the business affairs of the family.

From our examination of the record, we conclude that the trial court did not abuse its discretion in finding that Carol was unsuitable and thus disqualified to be the representative of the estate. Points of error one, two, four and five are overruled.

In point of error three, Carol asserts that the evidence was legally insufficient and, in the alternative, factually insufficient to support the thirty-two findings of fact of the court. She further asserts under this point of error that the findings of fact were immaterial and irrelevant to the question of whether she was unsuitable under section 78(e) of the Texas Probate Code. In her brief, Carol admits that twenty-seven of the findings of fact are not disputed by her. The five findings of fact which she apparently disputes are Nos. 11, 23, 29, 30, and 32:

11. The prior Independent Executor had the sole discretion to designate which estate assets were to be distributed in satisfaction of the marital deduction, but no such designation was ever made.

23. Since moving from Tyler, Carol Dean expressed her desire to remain uninvolved in the business affairs of the family.

29. The personal representative of the estate of L.A. Dean and the guardian of the estate of Barbara Smith Dean may be required to file lawsuits against the children of L.A. Dean to clear title to property owned by the estate.

30. Numerous administrative details relating to the partition and distribution of the estate have been neglected by the prior Independent Executor.

32. The value of property and the property used to satisfy the pecuniary interest of the children of L.A. Dean will be determined by the future decisions of the personal representative of the estate during the course of completing the administration.

As to finding of fact No. 11, the will itself clearly states that the independent executor has the sole discretion to designate which estate assets were to be distributed in satisfaction of the marital deduction devised to Barbara. Furthermore, Margaret Hussey ("Hussey"), a practicing attorney and the guardian of the estate of Barbara, testified that the marital deduction properties had not been selected by the prior executor. Finding of fact No. 23 is supported by the testimony of Carol's sister, Betty, who stated that she and Carol had a conversation about their father's estate approximately three months prior to the hearing. Carol told Betty that she had moved away from Tyler and did not plan to come back. She also stated that she did not want to be involved in her mother and father's estates, and basically wanted to "get away from all this mess." As to finding of fact No. 29, Hussey testified that, in her opinion, the personal representative of the estate might have to file a lawsuit against the children of L.A. Dean in order to obtain a legal construction of the will and to determine title to some of the property owned by the estate. Finding of fact No. 30 was supported by Hussey's testimony that the prior executor had filed no accounting in five years, had made no selection of the marital deduction properties so as to distinguish between those properties and the life estate properties, and had co-mingled funds of the estate with Barbara's funds. Hussey detailed several other aspects of the estate which need serious attention. As to finding of fact No. 32, it is clear from the will itself that the representative of the estate was to decide which properties would be used to satisfy the pecuniary interests of the children, and that the representatives' decisions would be determinative of the value to be placed on said properties. From our examination of the record and briefs, it appears

that all of the court's findings of fact are either undisputed or are supported by legally and factually sufficient evidence.

■ Finally, Carol challenges the relevance of the thirty-two findings of fact made by the trial court. She points out that there is no specific finding that she was unsuitable due to a claim of ownership of estate assets. However, several findings of fact made by the trial court related to the need for a representative of the estate, the conflicts existing among the family members, the potential for future lawsuits among the family members, and the need for a disinterested person to determine the values of estate properties and select those properties which are to be distributed to Barbara in accordance with the devise of properties equal to the marital deduction. The evidence at trial showed that if Carol served as the representative of the estate, she would be placed in the position of having to engage her mother, brother and sisters in litigation; she would be placed in the position of evaluating and selecting marital deduction assets all to her own detriment or to the detriment of the estate; and in behalf of the estate, she would be called upon to accuse her brother of possible wrongdoing. These factors are all relevant to the issue of whether Carol would be faced with conflicting interests which would make her unsuitable as the representative of the estate. As discussed under points one, two, four and five, it does not appear from the cases cited that the disqualifying conflict of interest which Carol describes is the exclusive test for determining whether or not a person is unsuitable to serve as an estate representative. Furthermore, her recent expression of disinterest in the estate would be material to the suitability of a person to serve as a personal representative of an estate. Carol's point of error number three is overruled.

The judgment of the trial court is *affirmed.*