**In re The ESTATE OF Velma Lee ROBINSON, Deceased.**

**No. 13–02–557–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

July 1, 2004.

Rehearing Overruled Aug. 19, 2004.

---

Cynthia T. Sheppard, Cuero, for appellant.

Larkin Thedford, Robert E. Bell, Edna, Elizabeth M. Provencio, Denton, Navarro, Rocha & Bernal, P.C., San Antonio, James J. Hartnett Jr., Will Ford Hartnett, R. Kevin Spencer, Hartnett Law Firm, for appellees.

Before Justices RODRIGUEZ, CASTILLO, and WITTIG [1].

OPINION

Opinion by Justice RODRIGUEZ.

This is a probate matter concerning the qualification and appointment of a co-executor of the estate of Velma Lee Robinson (the Estate). By one issue, appellant, Garland Sandhop, Sr., complains of the sufficiency of the evidence to support his disqualification as an executor of the Estate. We reverse.

I. Background

Following Robinson's death, the trial court admitted her 1995 will to probate, the primary beneficiaries of which were family members, including the Ayers and Cavitt families.[2] Appellee, Mary H. Thedford,[3] and others filed a will contest alleging Robinson lacked testamentary and mental capacity when she signed the 1995 will and related estate documents and was unduly influenced. The will contestants offered Robinson's 1983 will for probate, the primary beneficiary of which was the Velma Lee and John Harvey Robinson Charitable Foundation (the Foundation).

Appellant did not join as a plaintiff in the will contest. He was, however, identified as a necessary party and filed a pro se general denial. After a jury trial, Robinson's 1995 will was set aside as invalid, and her 1983 will was admitted to probate.[4]

Following the successful will contest, appellant, a named co-executor of the 1983 will, filed a motion to be appointed co-executor of the estate. Appellee, also named as a co-executor in the 1983 will, filed a motion to disqualify appellant.[5] Appellee alleged appellant was unsuitable to serve and should be disqualified because: (1) appellant represented the defendants who were promoting the 1995 will in the will contest; (2) appellant took a position in the will contest in support of the 1995 estate plan, which was directly opposed to supporting the 1983 estate plan; (3) appellant was duty bound to support the 1983 estate plan but did not do so and testified that it was not his responsibility to do so; (4) appellant was a material fact witness in the will contest in favor of and in support of the 1995 estate plan; and (5) appellant's position was in inherent conflict with his duties as independent co-executor under the 1983 will and/or co-trustee of any trust executed by Robinson prior to 1995.

The trial court heard appellee's motion to disqualify and appellant's motion to be appointed co-executor. Appellant was called as the only witness. Documents admitted into evidence for purposes of the

---

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp.2004).

2. The Ayers and Cavitts are the families of Robinson's sister and brother.

3. Mary H. Thedford filed the will contest in her capacity as co-trustee of the Velma Lee Robinson Revocable Trusts, No. I and No. II, and as co-independent executor of the Estate under Robinson's 1983 will.

4. On appeal, in cause number 13–02–00350–CV, we affirmed the trial court's judgment that set aside the 1995 will.

5. Appellee's motion also sought to disqualify a third named co-executor, Victoria National Bank (the Bank). The Bank, however, filed a declination and renunciation of its right to serve as independent co-executor, and appellee non-suited her motion as to the Bank.

hearing included the following: (1) appellant's answer and amended answer in the will contest; (2) two option agreements; and (3) the Secretary of State's certification of the court-ordered reinstatement of the Foundation. After hearing the application and motion and considering the pleadings, evidence, arguments and authorities cited, the trial court found appellant unsuitable to serve as co-executor of the Estate. The court ordered appellant disqualified and denied his application for appointment. Appellee was appointed as the sole dependent executor with bond.[6] The court entered findings of fact and conclusions of law. This appeal ensued.

## II. JURISDICTION

■■■ We first determine, sua sponte, our jurisdiction to consider this appeal. *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 678 (Tex.1990). The supreme court has set out the following test for determining whether an order arising from probate proceedings is final or interlocutory:

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.1995). In *In re Estate of Vigen*, 970 S.W.2d 597, 599 (Tex.App.-Corpus Christi 1998, no pet.), we held that an order settling someone's rights as an executor was a final, appealable order. *Id.; see Spies v. Milner*, 928 S.W.2d 317, 318–19 (Tex.App.-

Fort Worth 1996, no writ) (order denying Spies's application found to be final, appealable order).

In the present case the trial court found appellant to be unsuitable to serve as independent co-executor of the Estate. The court disqualified appellant from serving and denied his application to be appointed co-executor. The trial court's order clearly settled appellant's claim to be a co-executor. There are no ongoing proceedings relevant to this issue, and there are no pleadings that are part of that proceeding that concern undisposed-of issues or parties. *See Crowson*, 897 S.W.2d at 783. Thus, we conclude that the order upon which this appeal is based is final as to appellant's rights as a co-executor and, as such, is an appealable order.

## III. DISQUALIFICATION

### A. The Law

■■■ Section 77 of the probate code provides priority in the grant of letters testamentary to the executor named in a will if that person is qualified to act. *See* Tex. Prob.Code Ann. § 77(a) (Vernon 2003). However, a person may be disqualified to serve as an executor if the court finds the person "unsuitable." *Id.* § 78(e). When an applicant is among those named in the probate code as a person entitled to priority, as in this instance, the party opposing the appointment has the burden of establishing the applicant's disqualification. *Monson v. Betancourt*, 818 S.W.2d 499, 500 (Tex.App.-Corpus Christi 1991) (orig.proceeding) (citing *Powell v. Powell*, 604 S.W.2d 491, 493 (Tex.Civ.App.-Dallas 1980, no writ)). Therefore, appellee, who opposed appellant's motion, had the bur-

6. The trial court deferred the issue of the appointment of appellee as independent executor.

den of proving appellant was unsuitable to be co-executor of the Estate.

Unsuitability is not defined in the probate code, and case law has recognized no comprehensive, discrete explanation delineating attributes that make someone unsuitable under the probate code. *See Dean v. Getz,* 970 S.W.2d 629, 633 (Tex. App.-Tyler 1998, no pet.) (citing *Boyles v. Gresham,* 158 Tex. 158, 163, 309 S.W.2d 50, 53–54 (1958) and *Olguin v. Jungman,* 931 S.W.2d 607, 610 (Tex.App.-San Antonio 1996, no writ)). While there is no "bright line" test to be applied, generally a person claiming ownership of property, to the exclusion of the estate, is deemed unsuitable because of the conflict of interest between the person and the estate, while a person making a claim within the probate process (i.e., claiming under the will or attempting to collect a debt from the estate) is not deemed unsuitable. *See In re Estate of Foster,* 3 S.W.3d 49, 55 (Tex.App.-Amarillo 1999, pet. denied); *Olguin,* 931 S.W.2d at 610. The *Dean* Court reviewed the following cases that guide the courts in making that determination:

> An administrator was disqualified as "unsuitable" when the bank in which he owned stock claimed certain of the estate's assets as its own property. *Haynes v. Clanton,* 257 S.W.2d 789, 792 (Tex.Civ.App.-El Paso 1953, writ dism'd by agr.). An individual was disqualified from serving as administrator of the estates of both a husband and his wife wherein each estate had adverse claims to the same insurance proceeds. *Hitt v. Dumitrov,* 598 S.W.2d 355, 356 (Tex.Civ. App.-Houston [14th Dist.] 1980, no writ). A surviving spouse was found unsuitable because she claimed property of the husband's separate estate as community property. *Ayala v. Martinez,* 883 S.W.2d 270[, 272] (Tex.App.-Corpus Christi 1994, writ denied). A finding by the trial court that a surviving wife was unsuitable as the representative of her husband's estate was affirmed by this court where her appointment "would be inimical to the interests of the Estate." Inimical was defined as adverse, antagonistic, and hostile. *Formby v. Bradley,* 695 S.W.2d 782, 785 (Tex.App.-Tyler 1985, writ ref'd n.r.e.). Family discord has also been grounds for disqualifying an applicant. *Spies,* 928 S.W.2d at 319. As the court stated in *Hitt,* "each estate should have a representative that will assume the role of an advocate to achieve the best possible advantage for the estate." *Hitt,* 598 S.W.2d at 356. If one has personal interests that are so adverse to those of the estate or the beneficiaries thereof that both cannot be fairly represented by the same person, then that person is not a proper person to administer the estate. *Bays [v. Jordan ],* 622 S.W.2d [148,] 149 [ (Tex.App.-Fort Worth 1981, no writ) ]; citing 18 A.L.R.2d 635 (1951).

*Dean,* 970 S.W.2d at 633–34. In *Dean,* as executrix the daughter would have to litigate against her mother, brother, and sisters; would have to select marital deduction assets to her own detriment or to the detriment of the estate; and would have to accuse her own brother, the former executor, of possible wrongdoing. *See id.* at 634. The court, thus, concluded the daughter was not suitable to serve as the executrix of the estate. *See id.*

In *In re Estate of Vigen,* this Court upheld a finding of unsuitability and disqualification of a named executor where evidence established a conflict of interest between the executor and the estate based on the executor's claim against the estate for a $12,000 check. *In re Estate of Vigen,* 970 S.W.2d at 600–02. The circumstances surrounding the drafting of the check were open to question, and the claim was being pursued in separate litigation. *Id.; cf. Boyles,* 309 S.W.2d at 54 (good-faith creditor of estate not necessarily unsuitable to serve as administrator but may be found

unsuitable when claim against estate is controversial); *In re Foster*, 3 S.W.3d at 56 (independent executor named in will not unsuitable as matter of law simply because he has claim against estate); *Olguin*, 931 S.W.2d at 609–10 (trustee of charitable remainder trust not unsuitable to serve as independent executor of income beneficiary's estate); *In re Estate of Roots*, 596 S.W.2d 240, 244 (Tex.Civ.App.-Amarillo 1980, no writ) (executor's charging or intending to charge excess compensation does not bear on suitability to serve). Finally, the *Spies* Court found that there was no abuse of discretion in finding the daughter of the testator "unsuitable" because she had difficulty dealing with professionals, was a difficult witness, changed her answers when pressed, and spent money from mother's bank account without permission from the guardian of mother's estate, and because there was discord and animosity between the daughter and other relatives involved in the probate proceeding. *Spies*, 928 S.W.2d at 319.

### B. Standard of Review

The trial court has broad discretion in finding a proposed executor "unsuitable." *Dean*, 970 S.W.2d at 633. An abuse of discretion standard is the proper standard of review on appeal. *See In re Estate of Vigen*, 970 S.W.2d at 600; *In re Estate of Foster*, 3 S.W.3d at 54; *Olguin*, 931 S.W.2d at 611. To constitute an abuse of discretion, the finding must be arbitrary or unreasonable. *In re Estate of Vigen*, 970 S.W.2d at 600; *Dean*, 970 S.W.2d at 633. To prove the trial court abused its discretion, appellant must show that "the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *In re Estate of Vigen*, 970 S.W.2d at 600; *Dean*, 970 S.W.2d at 633.

Appellant's issues on appeal challenge the sufficiency of the evidence. However, as in *Zorilla v. Wahid*, 83 S.W.3d 247, 252 n. 1 (Tex.App.-Corpus Christi 2002, no pet.), we follow the majority of courts in concluding that "when the trial court's ruling on the merits is reviewed under an abuse of discretion standard, the normal sufficiency of the evidence review is part of the abuse of discretion review and not an independent ground for reversal." *Id.* (citing, *e.g.*, *Crawford v. Hope*, 898 S.W.2d 937, 940–41(Tex.App.-Amarillo 1995, writ denied); *Thomas v. Thomas*, 895 S.W.2d 895, 898 (Tex.App.-Waco 1995, writ denied); *In re Driver*, 895 S.W.2d 875, 877 (Tex.App.-Texarkana 1995, no writ)); *see Handley v. Handley*, 122 S.W.3d 904, 907 (Tex.App.-Corpus Christi 2003, no pet.) (division of property reviewed for abuse of discretion).

In reviewing legal sufficiency evidence issues, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Southwest Key Program, Inc. v. Gil–Perez*, 81 S.W.3d 269, 274 (Tex.2002); *see Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002). When a party attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, as in this case, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.-Corpus Christi 1990, writ denied). When we review a challenge to the factual sufficiency of the evidence, we consider all of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989) (per curiam). Because appellant, in this case, did not have the burden of proof at trial, he must demonstrate that the evidence is insufficient to support the adverse finding. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam) (citing

*Croucher,* 660 S.W.2d at 58); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275–76 (Tex.App.-Amarillo 1988, writ denied).

### C. Unsuitability

By one issue, appellant complains of the sufficiency of the evidence to support the court's finding that appellant is unsuitable to serve as executor of the Estate. Appellant asserts appellee has failed to satisfy her burden under probate code section 78(e) to prove disqualification. *See Monson,* 818 S.W.2d at 500. He argues appellee failed to establish any of her asserted bases for disqualification, including conflict of interest, an adversary relationship, hostility, an inability to perform his duties if appointed co-executor, and a duty to investigate or contest the 1995 will.

### 1. Conflict of Interest

■ By his first sub-issue, appellant contends there is no showing he had a conflict of interest that would disqualify him from serving as executor. Appellant asserts appellee failed to prove any conflict of interest between appellant as accountant for the Ayers and Cavitt families who were proponents of the 1995 will, and appellant as executor of the 1983 will.[7]

Testimony provided by appellant at the hearing established he had performed, and hoped to continue to perform, accounting services for members of the Ayers and Cavitt families and their business entities. Appellant also served as the accountant for partnerships set aside by the trial court's judgment in the will contest. Appellant testified that his duty as an accountant is to keep his client's financial information confidential. *See Parker v. Carnahan,* 772 S.W.2d 151, 158 (Tex.App.-Texarkana 1989, writ denied) (accountants, as skilled tax professionals, are subject to same rules

of liability in practice of their profession as members of other skilled professions and are measured by standard of care applicable to their profession). Appellant also testified that his responsibilities as accountant for the Ayers and Cavitts would not conflict with his serving as executor of the 1983 will, that he has no claim against the Estate, and that he is not a beneficiary under the 1983 will. Appellee introduced no controverting evidence.

While there is evidence to support the court's findings that appellant worked as an accountant for members of the Ayers family and the Cavitt family since 1996 and is their current accountant, there is no evidence to support a finding that appellant is an agent for some members of the Ayers family and the Cavitt family. The record establishes that appellant provided accounting services, nothing more. *See Lone Star Partners v. NationsBank Corp.,* 893 S.W.2d 593, 600 (Tex.App.-Texarkana 1994, writ denied) (merely engaging accountant does not, absent evidence of control, make accountant an agent of employer). We conclude, therefore, there is no evidence in the record to support the court's determination that appellant was an agent for some members of the Ayers family and the Cavitt family. Moreover, appellant's provision of accounting services to the Ayers and Cavitt families, under the facts of this case, does not create a conflict of interest that would disqualify appellant from serving as executor of the Estate. Case law does not support appellee's argument that such a business relationship can be the basis for a finding of unsuitability. Thus, a determination of unsuitability on this basis was an abuse of discretion.

### 2. Adversary in Will Contest

■ By his second sub-issue, appellant contends that the trial court erroneously

---

7. This is a challenge to finding of fact 6 that provides "Sandhop is an agent for some members of the Ayers family and the Cavitt family."

found that he chose not to defend the 1983 will and that he supported and assisted the Ayers and Cavitt families in their efforts to defeat the 1983 will by participating in strategy discussions and by providing information that assisted them in jury selection.[8] Appellee contends that appellant placed himself in an adversarial position to the will contestants and should be disqualified as executor.

The will contest identified appellant as a necessary party because he was named as a co-trustee of two revocable trusts under the 1983 will. In response, appellant filed a pro se general denial. Appellant testified he did not understand the effect of his answer, but was told it was necessary to protect himself. He thought he was denying his "part in the case" but did not oppose the will contest.

The evidence establishes that appellant's participation in the will contest included possessing Robinson's financial information, comprised of twenty to twenty-five boxes, which was available to both sides to the will contest. Appellant looked over a potential jury list at the request of the attorneys promoting the 1995 will and told them who he knew and who might not like him. He testified he would have done the same thing for the attorneys promoting the 1983 will had they asked. Appellant participated as a fact witness in the will contest where he testified he had insufficient personal knowledge of Robinson's mental state to form an opinion about her mental capacity to execute the 1995 will. While appellant sat with the defendants during closing argument, he acknowledged that he sat on both sides at different times during the trial. Appellant also testified he would not have said anything to help either side if it was not true, and he never refused to help lawyers from either side of the contest. Appellant explained he sought to remain neutral because he had no basis to take a position regarding either will. There was no controverting testimony.

We conclude that the trial court's findings that appellant supported the position of the Ayers and Cavitt families in seeking to maintain the probate of a later will and assisted them in an effort to defeat the 1983 will, are without support in the record. Furthermore, the trial court's finding that appellant "chose not to defend" the 1983 will, at a time when he knew he was named as co-executor under the will, is also unsupported by the evidence. The 1983 will was effectuated as a matter of law when the 1995 will was found to be invalid. As set out above, appellant testified he had no basis for taking sides on the issue of whether the 1995 will and other estate documents were valid, which was the only issue before the court in the will contest. Having found insufficient evidence to support the "will contest adversary" findings, we conclude the trial court abused its discretion if its determination of unsuitability was made on this basis.

### 3. Hostility

■ By his next sub-issue, appellant contends there was no showing that he was hostile toward the will contestants or that he changed his sworn testimony in any meaningful way that showed hostility, such that this could be the basis of his

---

8. In this sub-issue, appellant challenges the following findings of fact:

20. Sandhop was aware that he was named in the 1983 will as executor, but chose not to defend that will in this case;
21. Sandhop supported the position of the Ayers Family and the Cavitt Family in seeking to maintain the probate of a later will; and
22. Sandhop assisted the Ayers Family, the Cavitt Family and their lawyers in their effort to defeat the October 28, 1983 will by participating in strategy discussions and by providing information which assisted them in jury selection.

disqualification.[9] First, regarding his sworn testimony, the record reveals the following differences between appellant's deposition testimony and his trial testimony in the will contest: (1) appellant testified he had forgotten that certain documents were in his file, and another time that he never knew they were in his file; and (2) appellant testified he had no reason to believe appellee was not an honest person, and another time he had not formed an opinion whether she was a truthful person. Even if we characterize these differences in testimony as "changes," we cannot conclude they are the type of changes that would rise to the level of showing that a witness was hostile or difficult. *Cf. Spies*, 928 S.W.2d at 319 (no abuse of discretion in finding "unsuitability" because daughter of testator was difficult witness, changed answers when pressed, and because there was discord and animosity between daughter and other relatives involved in probate proceeding).

Secondly, other evidence allegedly supporting appellee's hostility argument included the dissolution of the Foundation. Appellant testified he had seen the dissolution papers, and it was his understanding that the Foundation had been dissolved by the Secretary of State. Appellant also testified he had no idea whether he would recognize the validity of the Foundation. He had no "idea how it stands." Appellant did not "know the legal aspects of reestablishing the Foundation. If that's what's finally determined, that's the way the residue will go." Moreover, although appellee admitted the certificate showing the Foundation's reinstatement into evidence at the hearing, she did not question appellant about the certification or the Foundation's reinstatement. Finally, at the hearing appellant testified he had no antagonism toward appellee, for whom he had performed accounting services for thirty years. He described his relationship with appellee as good and testified he would be able to work with her and communicate with her as co-executor of the Estate.

Based on the above uncontroverted testimony and the testimony and analysis in the adversary sub-issue above, we conclude there is insufficient evidence to support the trial court's factual findings regarding appellant's alleged hostility toward the Estate and appellee. Thus, we conclude the trial court abused its discretion if its determination of unsuitability was made on the basis of hostility.

### 4. Performance of Duties as Executor if Appointed

■ Appellant next contends there is no showing he would not or could not perform his duties as executor.[10] Appellee argues that appellant is not prepared to accept his duty to defend the 1983 will.

---

9. In this sub-issue, appellant challenges the following findings of fact:

> 10. Sandhop has taken the position that the certificate reinstating the Foundation as a charitable entity in good standing in the State of Texas is not valid;
> 11. Sandhop has taken a position that is contrary and against the interest of the Foundation, the primary beneficiary of the Estate under the October 28, 1983 will of the Decedent;
> * * *
> 13. Sandhop changed his sworn testimony between his deposition, the first trial and the second trial of the case; and

> 14. Sandhop has shown hostility towards the position of the Foundation and the Dependent Executor [Thedford] with respect to the will contest.

10. By this sub-issue, appellant challenges the following findings of fact:

> 17. Sandhop refused to state whether he would defend the October 28, 1983 will and 1991 codicil of the Decedent, which have been admitted to probate and, which are being appealed by Sandhop's accounting clients; and
> * * *

Appellant testified he is not an attorney and is not sure what his legal duties will be as executor, but he will seek legal advice and do whatever is required of him as executor. He testified he did not know what would happen on appeal of the contest, but, if appointed, he would seek legal advice as to what his duties were in that regard. While appellant stated he hoped to remain neutral with respect to the appeal of the will contest, he further testified he would do whatever was legally required of him as executor, including suing his own accounting clients if necessary. Again, this testimony is uncontroverted. Based on the record evidence, we conclude there is insufficient evidence to support the trial court's findings related to appellant's ability to perform his duties as co-executor. Appellee's argument that appellant is not prepared to accept his duty to defend the 1983 will fails, and the court again abused its discretion if the disqualification was made on this basis.

### 5. Duty to Investigate or Contest 1995 Will

■■■ Appellant contends, by his final sub-issue, that there is no showing that he had a duty to investigate or contest the 1995 will, or, in the alternative, that his failure to do so would disqualify him. Appellant testified he did not investigate or contest the validity of the 1995 will because he did not think he had a duty to do so and because he did not have any reason upon which to base such an investigation or contest. Appellee's response to appellant's assertion is that a named executor of an unprobated will has a duty to investigate or contest the validity of another, later will.

The Texas Probate Code provides a time period in which an executor must file an application for the grant of letters testamentary and sets out duties owed by an independent executor of a probated will. *See, e.g.,* TEX. PROB.CODE ANN. §§ 74, 146, 233, 250, 251 (Vernon 2003). The probate code also provides for payment of necessary expenses and attorneys' fees to an executor who does contest a will. *Id.* § 243 (executor who defends will naming executor or prosecutes any proceeding in good faith for purpose of having will admitted to probate, entitled to payment of necessary expenses and attorney's fees out of estate); *but see id.* § 3(r) (executor not identified as interested person who would have standing to contest will). However, appellee provides no authority for her argument that appellant, who was a named co-executor in Robinson's 1983 will, had a duty to investigate or contest the 1995 will, and we find none. Thus, the trial court acted without reference to any guiding rules and principles, and any disqualification on this basis was an abuse of discretion.

### 6. Unchallenged Findings of Fact

Appellee asserts, even if all challenged findings were set aside, the remaining, unchallenged findings support a finding of unsuitability.[11] We have already conclud-

---

23. Sandhop testified that, if he served as executor, he would hope to be neutral with respect to the appeal of this Court's judgment and claims against his accounting clients.

11. Appellant did not challenge the following findings of fact:
4. Sandhop has worked for members of the Ayers family and the Cavitt family since 1996;

5. Sandhop is current accountant for members of the Ayers family and the Cavitt family;

\* \* \*

7. The Ayers family and the Cavitt family were adversaries with the Velma Lee and John Harvey Robinson Charitable Foundation (the "Foundation") in the will contest;

ed, however, that the fact that appellant does accounting work for some members of the families who advocated the 1995 will and the fact that he may have to take positions adverse to them constitute no evidence or insufficient evidence of unsuitability, and there is no authority that supports a position otherwise. Thus, such unchallenged findings of fact would not support a finding of unsuitability. Likewise, findings that appellant served as accountant for partnerships that were set aside by virtue of the court's judgment and the fact that he took the position that the Foundation was terminated and does not exist, do not constitute evidence of unsuitability. In fact, the Foundation was dissolved by the 1995 estate plan, and appellant testified he did not know what its status was at the time of the hearing. As explained above, appellee did not develop appellant's testimony regarding the status of the Foundation, although the reinstatement certificate was admitted into evidence. Moreover, unchallenged findings that the Ayers and Cavitt families were adversaries of Thedford and the 1983 will are irrelevant to the determination of unsuitability in this case. Thus, appellee's

argument regarding the unchallenged findings fails.

### 7. Challenged Conclusions of Law

■ Having concluded there is insufficient evidence to support the controlling findings of fact, the trial court's conclusions cannot be supported.[12] *See Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.,* 49 S.W.3d 347, 351 (Tex.2001) (correct conclusions of law will not require reversal if controlling findings of fact support a correct legal theory); *Mack v. Landry,* 22 S.W.3d 524, 528 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (conclusions of law will be upheld on appeal if judgment can be sustained on any legal theory supported by evidence).

Accordingly, having found no bases for the trial court's determination of unsuitability, we conclude the court acted without reference to any guiding rules and principles when it disqualified appellant as co-executor of the Estate. *See Downer,* 701 S.W.2d 238, 241–42 (Tex.1985); *In re Estate of Vigen,* 970 S.W.2d at 600; *Dean,* 970 S.W.2d at 633. Thus, the trial court abused its discretion. *See In re Estate of*

8. The Ayers family and the Cavitt family were adversaries of the Dependent Executor in the will contest;

9. Sandhop has taken the position that the Foundation was terminated and does not exist;

\* \* \*

12. The Ayers Family and Cavitt Family contend that the 1983 will and 1991 codicil are invalid;

\* \* \*

15. Sandhop hopes to continue working for the Ayers family and the Cavitt family as their accountant;

16. As executor Sandhop may have to take positions adverse to the Ayers family and the Cavitt family who he currently represents as an accountant and hopes to continue to represent;

\* \* \*

18. Sandhop has also served as an accountant for partnerships that were also set

aside by virtue of this Court's judgment; and

19. As executor Sandhop may be required to pursue money paid to or transferred [to] the Ayers Family and Cavitt Family from the assets of Velma Robinson or from the partnerships and may be required to pursue money received by the partnerships.

12. Appellant challenges the trial court's conclusions of law which are:

1. Sandhop has irreconcilable conflicts of interest, which prevent him from serving as personal representative in this Estate;
2. Sandhop is unsuitable to serve as Independent Executor or in any capacity as a personal representative in this Estate; and
3. Sandhop is disqualified from serving as Independent Executor or in any capacity as a personal representative in this Estate.

*Vigen,* 970 S.W.2d at 600; *Dean,* 970 S.W.2d at 633. Accordingly, we sustain appellant's sole issue.

## IV. WAIVER OF RIGHT TO BE APPOINTED EXECUTOR

■ Appellee asserts the trial court could have found appellant unsuitable because he waived his right to serve.[13] However, the trial court made no finding of waiver. *See* Tex.R. Civ. P. 299 (rule 299 requires finding of fact on all grounds of recovery and defense in order to form basis of judgment). A judgment cannot be supported by "implied findings where no element of the ground of recovery has been found by the trial court." *Jack Ritter Inc. Oil Co. v. Fred Bandas and Sons, Inc.,* 387 S.W.2d 70, 72 (Tex.Civ.App.-Austin 1965, no writ). Moreover, for the reasons discussed above, even had the trial court made such a finding we would conclude there is no evidence or insufficient evidence that appellant waived his right to be appointed executor.

## V. SANCTIONS

■ Finally, appellee asserts this appeal is frivolous and damages should be awarded against appellant for pursuing this meritless course. In reviewing a request for sanctions on the basis that the appeal is frivolous, we must determine whether appellant had a reasonable expectation of reversal or pursued the appeal in bad faith. *See* Tex.R.App. P. 45; *Mercier v. MidTexas Pipeline Co.,* 28 S.W.3d 712 (Tex.App.-Corpus Christi 2000, no writ); *Diana Rivera & Assocs., P.C. v. Calvillo,* 986 S.W.2d 795, 799 (Tex.App.-Corpus Christi 1999, writ denied). In this case, having concluded appellant's sole issue should be sustained, we must also conclude that appellant had a reasonable expectation of reversal and pursued the appeal in good faith. Thus, sanctions are not warranted.

## VI. CONCLUSION

Accordingly, we reverse the order of the trial court and remand the cause for further proceedings consistent with this opinion.

13. Appellee basis her argument on findings of fact 20 and 21 which provide:

    20. Sandhop was aware that he was named in the 1983 will as executor, but chose not to defend that will in this case; and

    21. Sandhop supported the position of the Ayers Family and the Cavitt Family in seeking to maintain the probate of a later will.