NO. 07-11-0021-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 1, 2012
_____

CYNTHIA BEEVERS, APPELLANT

V.

RUTHA LAMPKINS, APPELLEE

_____

FROM THE COUNTY COURT OF POTTER COUNTY;

NO. 28,850-01-P; HONORABLE W. F. "CORKY" ROBERTS, JUDGE
SITTING FOR THE HONORABLE ARTHUR WARE, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Cynthia Beevers, appeals from the trial court's order denying her application for administration, finding her unsuitable to serve as administratrix of the estate of Floyd Arthur Parshall, deceased, and granting Appellee's, Rutha Lampkins, application to serve as administratrix of that estate. In support, Beevers asserts (1) the trial court lacked jurisdiction to hear either Lampkins's or Beevers's *Applications for Administration* because neither applicant had served citation on interested parties in

compliance with section 128 of the Texas Probate Code, and (2) the evidence in support of the trial court's finding of unsuitability is legally and factually insufficient. We affirm.

## I. BACKGROUND

The parties do not dispute the following facts. On October 29, 2004, Parshall died at the Country Club Nursing and Rehab facility located in Amarillo, Potter County, Texas, at 86 years of age. Parshall's death certificate listed his immediate cause of death as end-stage dementia of Alzheimer's type and indicated he had suffered from dementia for years prior to his death. Parshall's only wife had predeceased him and he never had any children. At the time of his death, Parshall owned oil, gas, and other minerals leased to Continental Resources.

Beevers knew Parshall because he was a resident at the nursing facility where Beevers was employed as an office manager. At trial, she described their relationship as "very close friends." In June 2003, Parshall executed a form *Last Will and Testament* naming Beevers as the "personal representative" of his estate. The will made two specific bequests to Beevers, neither of which involved his mineral interests and one of which bequeathed to her a residence that he had previously transferred to a third party more than ten years prior to his execution of that will. The will did not contain any other specific or general bequests and it did not contain a residuary clause. While Parshall was at the nursing facility, Beevers was aware that he had living siblings.

More than five years after his death, on November 13, 2009, Beevers filed a *Proof of Death and Other Facts for Probate of Will as Muniment of Title* indicating that

the State of Texas was holding unclaimed property belonging to Parshall.  The same day, the trial court entered an order admitting the will to probate as a muniment of title.  In that proceeding, Beevers did not notify the court that Parshall had surviving heirs.

In January 2010, Beevers received a $4,000 royalty check from Continental Resources that belonged to Parshall's heirs.  On January 26, 2010, she then filed an *Application to Determine Heirship with Administration*, listing herself as Parshall's only heir and claiming to be "the owner of all of Decedent's Estate."  On March 1, the court appointed an attorney *ad litem* to represent Parshall's unknown heirs.  On March 16, Beevers filed an *Application for Probate of Will and Letters of Administration with Will Annexed* and in May of that year, her attorney sent a letter to Parshall's living siblings, including Lampkins, stating they were the sole surviving heirs of his estate.  Lampkins entered an appearance in that proceeding; however, she subsequently filed her own *Application for Letters of Administration* on October 5, 2010, seeking consolidation of the two probate proceedings and appointment of herself as administratrix of Parshall's estate.  On October 6, 2010, the clerk of the court issued citation on Lampkins's application for letters of administration, which citation was posted by the Potter County Sheriff on October 7, 2010.

On October 19, 2010, a hearing was held.  At that hearing the *ad litem* filed a report indicating that Parshall had a total of nine siblings (including Lampkins), five of whom were still living.  Beevers also appeared and testified that she had spent the $4,000 she received from Continental Resources because she thought it was hers.  When asked whether she agreed that the money did not belong to her, she answered: "No.  I don't agree with that."  She testified that, although she subsequently came to the

3

realization that she "didn't have any rights [to the money] because I met with [the trial court]," she had not returned the money because she had spent it on her "regular bills" and "because at the time I thought I was okay with it."

In its *Conclusions of Law,* the trial court concluded that the two probate proceedings should be consolidated, that the mineral interests leased by Continental Resources became the property of Parshall's heirs immediately upon his death, and that Lampkins should be appointed as Dependent Administratrix of his estate. The court further found that Beevers was unsuitable to serve as the personal representative of Parshall's estate "because she has a conflict of interest with the estate, has no relation to Decedent; and lives in Lubbock, Texas." Consequently, the trial court granted Lampkins's *Application for Letters Of Administration* and denied Beevers's. This appeal followed.

## II. JURISDICTION

By her first issue, Beevers asserts the trial court lacked jurisdiction to hear either Lampkins's or her applications for administration because neither applicant served citation on interested parties in compliance with section 128 of the Texas Probate Code. The Texas Probate Code provides that "[n]o application for the probate of a will or for the issuance of letters shall be acted upon until service of citation has been made in the manner provided for herein." Tex. Prob. Code Ann. § 128 (West Supp. 2011). When an application for letters of administration is filed with the clerk, citation shall issue to all parties interested in the estate, which citation shall be served by posting. *Id.* at 128(a).

4

Not only was citation issued and posted as required by section 128, we also note that both Beevers and Lampkins voluntarily appeared at the October 19th bench trial, with full notice of each other's pleadings, and for the purpose of adjudicating their competing applications for letters of administration pertaining to Parshall's estate. The record also reflects that on January 10, 2010, the Potter County Clerk issued citation by publication "[t]o all persons interested in the estate of Floyd Arthur Parshall," that citation was published one time in a newspaper of general circulation in Potter County on March 5, 2010, that the court appointed an attorney *ad litem* to represent the interest of any unknown heirs, and that the *ad litem* not only filed a report of her findings with the court, she also personally appeared at the October 19th hearing.

An appearance in person or by attorney, other than a "special appearance" for the limited purpose of contesting jurisdiction, is a general appearance and "shall have the same force and effect as if . . . citation had been duly issued and served as provided by law." Tex. R. Civ. P. 120. Therefore, as to Beevers, Lampkins, and Parshall's unknown heirs, these facts alone sufficiently establish that the trial court had both subject matter and personal jurisdiction. Tex. Prob. Code Ann. § 33 (West 2003). *See also In re Parker,* 275 S.W.3d 623, 628 (Tex.App.—Amarillo 2008, no pet.) ("[A] party waives the right to contest personal jurisdiction over it when it makes a general appearance before the court.")

Furthermore, in its *Conclusions of Law,* the trial court stated that "[n]otice and citation have been given in the manner and for the length of time required by law." After the trial court filed its *Findings of Fact and Conclusions of Law,* either party could file with the clerk of the court a request for specified additional or amended findings or

5

conclusions.  Tex. R. Civ. P. 298.  By failing to request amended or additional findings or conclusions, Beevers waived her right to complain on appeal about any error she assumes the trial court made in its finding.  *Smith v. Smith*, 22 S.W.3d 140, 149 (Tex.App.--Houston [14th Dist.] 2000, no pet.) (collected cases cited therein).  Beevers's first issue is overruled.

### III.  ADMINISTRATION OF THE ESTATE

Beevers next asserts there is no evidence that she had a conflict of interest with the estate, "improperly" obtained money belonging to the heirs, pursued her self-interests over the heirs, or did not intend to return a $4,000 royalty payment belonging to the estate.  We disagree.

### A.  STANDARD OF REVIEW

A court's ruling on a probate application is generally reviewed under an abuse of discretion standard.  *In re Estate of Gaines*, 262 S.W.3d 50, 55 (Tex.App.—Houston 2008, no pet.) (collected cases cited therein); *In re Guardianship of Bayne*, 171 S.W.3d 232, 235 (Tex.App.—Dallas 2005, pet. denied).  The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Id.*  (citing *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004)).

Appellant's second issue on appeal challenges the sufficiency of the evidence.  As such, when we review a trial court's ruling on the merits under an abuse of discretion standard, the normal sufficiency of the evidence review is part of the abuse of discretion review and not an independent ground for reversal.  *Crawford v. Hope*, 898 S.W.2d 937,

6

940-41 (Tex.App.—Amarillo 1995, writ denied). *See In re Estate of Robinson*, 140 S.W.3d 801, 807 (Tex.App.—Corpus Christi 2004, pet. dism'd) (collected cases cited therein). Further, in a bench trial as we had here, the trial court's findings of fact have the same force and effect as a jury verdict; *Chevron Pipeline Co. v. Strayhorn*, 212 S.W.3d 779, 783 (Tex.App.—Austin 2006, pet. denied) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)), and appellate courts review the factual and legal sufficiency of the trial court's findings of fact and conclusions of law according to the same standards as jury findings. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)).

In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the challenged finding, indulge every reasonable inference to support it; *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005), and credit favorable evidence if reasonable jurors could, while disregarding any contrary evidence unless reasonable jurors could not**.** *Id.* at 827. A challenge to legal sufficiency will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla.[1] *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 793 (Tex. 2006). Furthermore, so long as the evidence falls within the zone of reasonable disagreement, we may not invade the factfinder's role, who alone determines the credibility of witnesses, the weight to be given their testimony, and whether to accept or reject all or part of their testimony. *Wilson,* 168 S.W.3d at 822.

---

[1]Evidence does not exceed a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

7

In reviewing a factual sufficiency challenge, we consider all the evidence and set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772. If, as here, the appellant is challenging the factual sufficiency of the evidence to support a finding on an issue on which the other party had the burden of proof, we must overrule the complaint unless, considering all the evidence, the finding is clearly wrong and manifestly unjust. *See Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 637 (Tex.App.--Tyler 2004, no pet.) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)). Inferences may support a judgment only if they are reasonable in light of all the evidence; *id.*, and again, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 615-16 (Tex.App.--Houston [14th Dist.] 2001, pet. denied).

## B. SUITABILITY

The Probate Code provides priority in the grant of letters testamentary to an executor named in a will if that person is qualified to act. *See* Tex. Prob. Code Ann. § 77(a) (West 2003). However, a person may be disqualified to serve if the court finds the person "unsuitable." *Id.* § 78(e). When an applicant is among those named in the probate code as a person entitled to priority, as in this instance, the party opposing the appointment has the burden of establishing the applicant's disqualification. *In re Estate of Robinson*, 140 S.W.3d at 805. Therefore, assuming the validity of Parshall's will, Lampkins had the burden of establishing that Beevers was unsuitable to be appointed personal representative of his estate.

Unsuitability is not defined in the probate code, and case law has recognized no comprehensive, discrete explanation delineating attributes that make someone unsuitable under the probate code.[2] *Id.* at 806. While there is no "bright line" test to be applied, generally a person claiming ownership of property, to the exclusion of the estate, is deemed unsuitable because of a conflict of interest between the person and the estate, while a person making a claim within the probate process (i.e., claiming under the will or attempting to collect a debt from the estate) is not deemed unsuitable. *See In the Estate of Foster*, 3 S.W.3d 49, 55-56 (Tex. App.—Amarillo 1999, pet. denied). As the court stated in *Hitt v. Dumitrov*, 598 S.W.2d 355 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ), "each estate should have a representative that will assume the role of an advocate to achieve the best possible advantage for the estate." *Id.* at 356.

The trial court's uncontested *Findings of Fact* indicate that Beevers was aware of the content of Parshall's will and that he had living siblings, yet even with the advice of counsel she listed herself as the sole owner of his estate. Furthermore, Beevers's utilization of the $4,000 royalty check for her own personal expenses or "regular bills" was tantamount to asserting a claim of ownership over the $4,000 royalty check to the exclusion of the estate. She used money belonging to the estate without seeking authorization of the trial court or the agreement of the estate beneficiaries. "In many instances, a creditor's claim will be obvious and beyond dispute. However when a creditor's claim is more controversial, the trial court is within its discretion to evaluate

---

[2] "It would appear, therefore, that the legislature intended for the trial court to have wide latitude in determining who would be appropriate for the purpose of administering estates." *Brittingham-Sada v. Mackie,* 158 S.W.3d 568, 572 (Tex.App.—San Antonio 2005, pet. denied) (quoting *Dean v. Getz*, 970 S.W.2d 629, 633 (Tex.App.—Tyler 1998, no pet.)).

whether the claim against the estate presents such a conflict of interest that the creditor is not suitable to act as administrator." *In re Estate of Vigen*, 970 S.W.2d 597, 601 (Tex.App.—Corpus Christi 1998, no pet.) (citing *Boyles v. Gresham*, 158 Tex. 158, 309 S.W.2d 50, 54 (Tex. 1958)).

Beevers's claim to the assets of the estate is more than controversial. Despite her realization that the $4,000 royalty payment belonged to beneficiaries of the estate, she had not returned the money at the time of the hearing.[3]

Furthermore, aside from her unauthorized use of the royalty payment, Beevers failed to notify the trial court that Parshall had surviving heirs when she filed her *Proof of Death and Other Facts for Probate of Will as Muniment of Title*, and indicated in her *Application to Determine Heirship with Administration* that she was Parshall's only heir and "the owner of all of Decedent's Estate." Because this is some evidence that Beevers pursued her own self-interests over the interest of Parshall's heirs, the trial court's determination that Beevers was unfit to serve as administrator was neither arbitrary, unreasonable, nor made without reference to guiding principles. *See In re Estate of Vigen,* 970 S.W.2d at 601. That is, we find there is more than a scintilla of evidence that Beevers had a substantial conflict of interest with the estate and, considering all the evidence, the trial court's finding was not clearly wrong or manifestly unjust. *See Formby v. Bradley,* 695 S.W.2d 782, 785 (Tex.App.—Tyler 1985, writ ref'd n.r.e.). Beevers's second issue is overruled.

---

[3]Although Beevers indicates, in her brief, that she has since returned the $4,000 royalty payment to Continental Resources, "[i]t is elementary that, with limited exceptions not material here, an appellate court may not consider matters outside the appellate record." *Siefkas v. Siefkas*, 902 S.W.2d 72, 74 (Tex.App.—El Paso 1995, no writ) (citing *Sabine Offshore Service v. City of Port Arthur*, 595 S.W.2d 840 (Tex. 1979)).

10

**CONCLUSION**

The trial court's order is affirmed.

Patrick A. Pirtle
Justice