**In re ESTATE OF Wilhelm VIGEN, Deceased.**

No. 13–96–548–CV.

Court of Appeals of Texas, Corpus Christi.

March 12, 1998.

Rita Beth Whatley, McAllen, for appellant.

William D. Peisen, Law Office of William D. Peisen, Judy Lee Wong, Talbot & Wong, McAllen, for appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellant Helen James brings this appeal from an order denying her application for letters testamentary in the estate of Wilhelm Vigen. Wilhelm Vigen died on January 16, 1995. Helen James was not related to Wilhelm, but cared for him in his later years. Wilhelm Vigen was ninety-six years old at the time of his death. James was eighty-nine at that time. Marion Vigen, Wilhelm's niece and the appellee in this proceeding, was appointed temporary administrator of his estate on March 28, 1995. On April 26, 1995, James applied for probate of a will written by Wilhelm in 1992. The will named James as executor of his estate, but did not provide for independent administration. Marion Vigen opposed James's application. A hearing was held on James's application and the trial court found that the will was entitled to probate; however, the court also found that a substantial conflict of interest between James and the estate rendered James unsuitable to serve as executor of the estate.[1] Therefore the trial court ordered that Marion Vigen continue as administrator until such further order of the court.

James brings eight points of error on appeal, arguing that the trial court erred in failing to admit the will to probate; failing to revoke the previous letters testamentary and either grant letters testamentary to James or grant letters of administration with will annexed; conducting its own cross-examination of James; finding a conflict of interest between James and the estate and that James

was unsuitable to serve as executor; and in considering inadmissable testimony. We hold that the trial court erred by failing to admit the will to probate and grant administration of the estate with will annexed.

## Appealability

We first consider Marion Vigen's contention that this appeal should be dismissed because the trial court's order was not a final, appealable order. The Texas Supreme Court has articulated the following test for determining whether an order arising from probate proceedings is final or interlocutory:

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.1995).

Marion argues that, because the trial court ordered that she continue as administrator "until such further order of the court," the order was not final and the issue of whom should be the administrator of the estate remained open. We do not agree. The trial court's order settled James's claim to be the executor. There are no ongoing proceedings relevant to this issue, and no "pleadings also part of that proceeding" concerning "issues or parties not disposed of." Our decision comports with the decision of the Fort Worth Court of Appeals in *Spies v. Milner*, 928

---

1. Section 78 of the probate code sets out the grounds for disqualification of an executor or administrator:

   Persons Disqualified to Serve as Executor or Administrator
   No person is qualified to serve as an executor or administrator who is:
   (a) An incapacitated person;
   (b) A convicted felon, under the laws either of the United States or of any state or territory of the United States, or of the District of Columbia, unless such person has been duly pardoned, or his civil rights restored, in accordance with law;

   (c) A non-resident (natural person or corporation) of this State who has not appointed a resident agent to accept service of process in all actions or proceedings with respect to the estate, and caused such appointment to be filed with the court;
   (d) A corporation not authorized to act as a fiduciary in this State; or
   (e) A person whom the court finds unsuitable.
   Tex. Prob.Code Ann., § 78 (Vernon 1980).

S.W.2d 317, 318–19 (Tex.App.—Fort Worth 1996, no writ). In Spies, the trial court found Emma Spies to be unsuitable to serve as executor of the estate of Marie Burkes and denied her application to be appointed executor. In finding that the order denying Spies application was a final, appealable order, the appellate court noted that "the order specifically states that Emma is disqualified to serve as the personal representative of Marie's estate. It is final as to Emma's rights as executrix." Spies, 928 S.W.2d at 319.[2] Similarly, in this case, the order specifically stated that James "is disqualified to serve as executrix of the estate." We hold that this was a final, appealable order.

### Continuation of the Temporary Administration

We next consider James's arguments in points of error one, two, and three that the trial court erred by continuing the temporary administration and failing to admit the will to probate and either grant letters testamentary to James or grant letters of administration with will annexed. Section 83(c) of the probate code controls the resolution of this issue. Section 83(c), titled "Where Letters of Administration Have Been Granted," provides:

> Whenever letters of administration shall have been granted upon an estate, and it shall afterwards be discovered that the deceased left a lawful will, such will may be proved in the manner provided for the proof of wills; and, if an executor is named in such will, and he is not disqualified, he shall be allowed to qualify and accept as such executor, and the letters previously granted shall be revoked; but, if no such executor be named in the will, or if the executor named be disqualified, be dead, or shall renounce the executorship, or shall neglect or otherwise fail or be unable to accept and qualify within twenty days after the date of the probate of the will, or shall

neglect for a period of thirty days after the discovery of such will to present it for probate, then administration with the will annexed of the estate of such testator shall be granted as in other cases....

Tex. Prob.Code Ann. § 83(c) (Vernon 1980).

In this case, James sought probate of Wilhelm's will after letters of administration had been granted. The will was proven in the manner provided for the proof of wills, and the trial court's order recites that all the necessary proof required for probate of the will had been made and the will was entitled to probate. Although the will named James as executor, the trial court disqualified her. Section 83(c) dictates that under these circumstances administration with the will annexed of the estate of the testator shall be granted.

Marion argues that the trial court was entitled to appoint a temporary administrator during the pendency of the will contest under section 132 of the probate code. Section 132(a) provides that "pending a contest relative to the probate of a will or the granting of letters of administration, the court may appoint a temporary · administrator." Tex. Prob.Code Ann. § 132(a) (Vernon Supp. 1998). Marion cites Baptist Found. of Texas v. Buchanan, 286 S.W.2d 452, 455 (Tex.Civ. App.—Waco 1956, writ ref'd n.r.e.) as support for her argument. In Baptist Found. an order of the county court was pending de novo review at the district court level. The court of appeals held that the existence of a pending will contest necessitated appointment of a temporary administrator to protect the assets of the estate. Id. While we agree that the trial court may have had discretion to appoint a temporary administrator while this case is on appeal, we do not read section 132 as authorizing the trial court to forego its obligation to render a final ruling pursuant to section 83(c) regarding whom should be appointed as executor or permanent administrator of the estate just because an appeal is

---

**2.** Spies did not explicitly apply the analysis stated in Crowson. Rather, Spies applied a "substantial right" analysis, citing Vineyard v. Irvin, 855 S.W.2d 208, 210 (Tex.App.—Corpus Christi 1993, no writ). Crowson acknowledged the "substantial right" analysis and described it as "one of the factors for determining whether a probate order

is appealable." Crowson, 897 S.W.2d at 783. The Crowson court felt that a new articulation of the rule for appealability of probate orders was necessary because "our language heretofore has been imprecise." Id. We do not consider Crowson to have invalidated the "substantial right" analysis relied on in Spies.

anticipated. The trial court should have named an executor or administrator and then, if an appeal left the finality of that ruling pending, considered appointing a temporary administrator to serve during the interim period while the appeal was pending. James's first three points of error are sustained.

### The Trial Judge's Questioning of James

James contends in her fourth, seventh, and eighth points of error that the trial court acted improperly in conducting its own examination of James while she was testifying and improperly considered the testimony elicited from its own questions in making its order. James was examined on direct examination, cross-examination, and then on re-direct. When James's counsel announced that she had no more questions and Marion Vigen's counsel also announced that he had no more questions, the trial judge began asking questions of James. James did not object. On appeal, James contends that the trial court abandoned its role as an impartial tribunal by "interrogating appellant as in cross examination," in violation of her due process rights.

█ By not objecting to the trial court's questions, James waived any error. Tex. R.App. P. 33.1. We also note that, even if James had objected, the right of a trial judge to examine witnesses in a bench trial is well established. See, e.g., *Pitt v. Bradford Farms*, 843 S.W.2d 705, 708 (Tex.App.—Corpus Christi 1992, no writ).

█ James also complains that part of the testimony elicited by the trial judge included statements made by the deceased, which constituted improper evidence under rule 601(b) of the Texas Rules of Civil Evidence. Rule 601(b) prohibits testimony in probate proceedings regarding oral statements of the testator. However, James did not object to this testimony, and therefore has waived her complaint on appeal. Tex.R.App. P. 33.1. James's fourth, seventh, and eighth points of error are overruled.

### Whether James was Unsuitable

█ James contends in her fifth and sixth points of error that there was insufficient evidence to support the trial court's determination that James was unsuitable to serve as executor because she had a conflict of interest with the estate. Marion argues that "sufficiency of the evidence" analysis is inappropriate, because a trial court's determination of the suitability of a potential executor or administrator is reviewed according to an "abuse of discretion" standard. An "abuse of discretion" standard is indeed the proper standard of review. *Olguin v. Jungman*, 931 S.W.2d 607, 610 (Tex.App.—San Antonio 1996, no writ); *Kay v. Sandler*, 704 S.W.2d 430, 433 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996).

█ James acknowledges two possible grounds for a finding that she has a conflict of interest that renders her unsuitable to serve as executor. The first is a claim made by James against the estate for a check for $12,000 James received from Wilhelm while he was in the hospital on the last day of his life. The second is based on a promise mentioned in James's testimony wherein Wilhem promised James that he would give her half of his investments as compensation for the care that she provided to him. James is pursuing her claim for the $12,000 check in separate litigation. She has not made any claim for half of Wilhelm's investments. She testified that the check was intended by Wilhelm to be in lieu of the promised investments, as he had not made arrangements to transfer ownership of the investments. James argues, and we agree, that James is not claiming half of Wilhelm's investments. Marion does not argue that a conflict exists pertaining to the promise for half of the investments, but argues instead that the claim for the check creates the conflict of interest.

James testified that shortly before his death Wilhelm gave her the check for $12,000 because "he wanted to make up for the fact that he had forgotten to give me the half that

he had agreed to." She testified that she felt she deserved the $12,000 because she spent four years caring for Wilhelm. She also testified that she routinely wrote out checks for Wilhelm, leaving only the signature for him to add. There was also evidence that Wilhelm had once become lost while driving in the area where he lived. Marion argues this is evidence that Wilhelm was forgetful and prone to confusion, and therefore vulnerable to being taken advantage of.

Marion also points to a letter sent by James to Wilhelm's nieces and nephews who were named in the will, asking them to disclaim their interests because an "error" in the will would necessitate probate proceedings and deplete the funds of the estate. The letter also states that if the beneficiaries will "trust" James, she will divide the estate among them and "do the best I can for all." She testified that she sent the letter based on legal advice she had received from an attorney, and that her intention was to distribute the assets of the estate according to the will. Marion argues that, if the beneficiaries had disclaimed their interests as James requested, James would have acquired the entirety of the estate. However, the letter indicates that it was not James's intent to keep the entire estate for herself, but rather to divide it among the beneficiaries for the benefit of all. If she had kept the assets for herself, the beneficiaries who were induced to disclaim their interests would likely have had a cause of action against her for fraud.

Therefore, the only basis for a finding of a conflict of interest was James's claim for the $12,000 check. James argues that this claim should not disqualify her because, as a matter of law, a person is not unsuitable to serve as executor by virtue of being a creditor. James's argument relies on section 77(f) of the probate code and the case of *Boyles v. Gresham*, 158 Tex. 158, 309 S.W.2d 50 (Tex. 1958). Neither of these authorities adequately supports her argument.

In *Boyles v. Gresham*, a creditor of an estate was appointed by the trial court as administrator of the estate. On appeal, those opposing the appointment of the creditor argued that, as a matter of law, a creditor is unsuitable to act as administrator. *Boyles*,

309 S.W.2d at 51. The Texas Supreme Court rejected this position and held that one who asserts a claim against an estate in good faith is not, as a matter of law, unsuitable to serve as administrator. Id. at 54. *Boyles* does not preclude a trial court from finding a creditor unsuitable where the trial court questions the good faith of the creditor's claim. Id.

Section 77 provides that, if there is neither an executor named in a will, a surviving spouse, principal devisee, or next of kin available to serve as administrator of an estate, then next in line to be appointed administrator is a creditor of the deceased. Tex. Prob.Code Ann. § 77 (Vernon 1980). Of course, this statute does not preclude a finding by the trial court that, under the circumstances of a case, a particular creditor should be disqualified because of a conflict of interest. In many instances, a creditor's claim will be obvious and beyond dispute. However, when a creditor's claim is more controversial, the trial court is within its discretion to evaluate whether the claim against the estate presents such a conflict of interest that the creditor is not suitable to act as administrator. *Boyles*, 309 S.W.2d at 54.

In this case, the facts that James routinely wrote Wilhelm's checks for him and that Wilhlem, already quite elderly, was on his deathbed when he signed the check, provided an adequate basis for the trial court to exercise its discretion in finding James unsuitable to serve as administrator of the estate due to an apparent conflict of interest. Of course, neither the trial court's finding nor our disposition of this issue constitute a determination that James's claim for the check is invalid. That is a matter for litigation in another proceeding. Because the circumstances surrounding the drafting of the check are open to challenge, the trial court held that James should not serve as administrator. This determination was neither arbitrary, unreasonable, nor made without reference to guiding principles, and therefore we will not disturb it on appeal. James's fifth and sixth points of error are overruled.

## Conclusion

The trial court erred by failing to admit the will to probate and by continuing with the temporary administration. Upon determining that the will had been proven and that James was disqualified to serve as executor, the trial court was required to order administration with the will annexed of the estate. We REVERSE the order of the trial court and REMAND for further proceedings consistent with this opinion.