In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00104-CV


______________________________




IN RE: THE ESTATE OF


SARAH E. BOREN, DECEASED





 


On Appeal from the County Court at Law


Lamar County, Texas


Trial Court No. P-16466




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 Sarah E. Boren's last will and testament named her nephew, Richard Finley, as her first
choice to serve as the independent executor of her estate, with his mother, Jeanetta Finley (Sarah's
sister-in-law), as his alternative or successor. The will also devised her estate in equal shares to
Richard and Jeanetta as her sole beneficiaries if her husband, Charles Boren, did not survive her. 
The trial court entered an order refusing Richard's application for probate and his application for
appointment as independent executor. The trial court also impliedly ruled that Richard and Jeanetta
had effectively disclaimed any claim to inheritance under Sarah by signing documents which
complied with Section 37A of the Texas Probate Code.

 Richard had served as attorney-in-fact for Sarah and her husband, Charles, neither of whom
had children. However, Charles was determined incapacitated and a guardian of his estate was
appointed; the issuance of the letters of guardianship rendered the durable power of attorney given
by Charles no longer effective. (1) 

 Charles's guardian had made application for the sale of real estate and this application was
pending at Charles's intestate death in December 2004. Richard, who still held the authority granted
him under Sarah's power of attorney, had opposed the sale of the real estate. However, after
Charles's death, Richard voiced dismay over the conflict among the family. Dee Boren (Charles's
brother) testified that Richard told relatives that it was his desire to mend rifts in the family; Dee
further testified that as he and Richard stood over Charles's coffin, Richard said, "[M]e and Momma
is going to sign a waiver or papers and remove ourselves from this." Richard testified further that,
"He [Finley] said I know we're not entitled to nothing that Charles has got, and he said I want the
family to get back close, said I promise you I will do that." Beverly Parks (Charles's niece and his
guardian at the time of his demise) said that Richard had told her that it was his desire to ameliorate
the conflicts within the family and that, "He said what do I have to do to get this family back
together?" She further stated that Richard had told her that peace in the family was extremely
important to him, that he did not need or want anything that Sarah or Charles had owned, and
inquired if there was anything he could sign or anything he could do to demonstrate that fact and thus
assuage the hard feelings against him within the extended families of Charles and Sarah. Richard
later told Parks that he had spoken with Jeanetta and that she was in agreement with him to sign such
an agreement in order to "get the family back together." Parks indicated that, relying on these
conversations, she had her attorney prepare the waiver/disclaimers in controversy.

 Richard retrieved the documents prepared by Parks's lawyer and took them to an attorney of
his own who, although he did not read them and did not comprehend their content, advised Richard
to sign them. Richard and Jeanetta then signed the waivers and returned them to Parks's attorney,
who caused them to be filed in the papers of the Charles Boren guardianship, which had yet to be
closed. These waivers and/or disclaimers were entitled, "Waiver of Service, Waiver of Interest, and
Approval and Consent to Sale of Real Property"; after two sentences which recited the appearance
and identity of the signors, each of the documents states, "I hereby waive any interest or claim I have
or may have in or against their [i.e., Charles's and Sarah's] respective estates by will, inheritance,
right of survivorship, or otherwise." Richard subsequently indicated that he believed the waivers to
do nothing more than to consent to the sale of real estate, expressing ignorance that these had the
effect of terminating any claims he had under the will of Sarah.

 However, on January 7, 2005 (eight days after the waivers had been filed in the
guardianship), two things happened on the same date: (1) Richard and Jeanetta filed revocations of 
the disclaimers which they had previously signed, and (2) Sarah died. 

 On August 29, 2006, Richard filed an application for the probate of Sarah's will which also
requested his appointment as independent executor; this application was countered with two separate
contests: one filed by Parks and another by Marcella Matney, Sarah's sister. 

 After a hearing before the court, the trial court rejected the contest filed by Parks on the basis
that although she was an heir-at-law of Charles, she did not occupy a similar position in regard to
Sarah's estate; she, therefore, did not have standing to contest the application. However, the court
found Matney to have standing to challenge Richard's application.

 The order entered by the court denied the application of Richard for the probate of the will
of Sarah. It also made evidentiary findings (1) that the waivers of Richard and Jeanetta "were in
substantial compliance with Section 37A of the Texas Probate Code," (2) that the waivers were
signed knowingly and voluntarily by them, and (3) that Richard was an unsuitable person to act as
executor because of demonstrated violations of his fiduciary duties to Charles and Sarah and it would
be improper to name him because of discord and animosity between him and other relatives of Sarah. 

JURISDICTION OVER APPEAL

 Neither party raised any question of whether this Court has jurisdiction over this appeal and
at oral arguments, both maintain that this is an appealable order. Despite that, the first inquiry an
appellate court must make in any case is whether it has jurisdiction to consider the appeal. See
Materials Evolution Dev. USA, Inc. v. Jablonowski, 949 S.W.2d 31, 33 (Tex. App.--San Antonio
1997, no pet.); McClennahan v. First Gibraltar Bank F.S.B., 791 S.W.2d 607, 608 (Tex.
App.--Dallas 1990, no writ). If the appellate court lacks jurisdiction, the appeal must be dismissed.
See Jablonowski, 949 S.W.2d at 33; McClennahan, 791 S.W.2d at 608. Generally, appellate
jurisdiction exists only in cases in which a final judgment has been rendered that disposes of all
issues and parties in the case. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 268 (Tex. 1992). 
It is fundamental error for an appellate court to assume jurisdiction over an interlocutory appeal
when it is not expressly authorized by statute. See New York Underwriters Ins. Co. v. Sanchez, 799
S.W.2d 677, 678-79 (Tex. 1990).

 Section 5(g) of the Texas Probate Code provides that "[a]ll final orders of any court
exercising original probate jurisdiction shall be appealable to the courts of appeals." Tex. Prob.
Code Ann. § 5(g) (Vernon Supp. 2008). However, other than certain provisions in the Code that
certain orders are final and appealable (e.g., Tex. Prob. Code Ann. § 55(a) (Vernon 2003), which
declares a determination of heirship to be final and appealable), the Probate Code does not clarify
which orders are final and appealable. Young v. First Cmty. Bank, N.A., 222 S.W.3d 454, 456 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). 

 As a general rule, appeals are only available from a final judgment. Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 195 (Tex. 2001). Similarly, except when "specially provided by law," there
may be but "one final judgment" rendered in any cause. Tex. R. Civ. P. 301. However, Texas law
has long recognized that probate proceedings may involve multiple judgments "on certain discrete
issues," each of which may be "final for purposes of appeal." De Ayala v. Mackie, 193 S.W.3d 575,
578 (Tex. 2006). 

 In the case before us, although the application of Richard (named in the will of Sarah to serve
as independent executor without bond) to be appointed executor was rejected, there was no personal
representative of the estate of Sarah appointed. (2) The right to serve as the executor of an estate is a
"substantial right" and a denial of that right is a final and appealable order. In re Estate of Vigen, 970
S.W.2d 597, 599 (Tex. App.--Corpus Christi 1998, no pet.). To be appealable, the order only has
to finally dispose of the issue or controverted question for which that particular part of the
proceeding was brought. Tex. Prob. Code Ann. § 5(g); Taliaferro v. Tex. Commerce Bank, 660
S.W.2d 151, 153 (Tex. App.--Fort Worth 1983, no writ). Thus, a probate order is appealable if it
"finally adjudicates a substantial right." Spies v. Milner, 928 S.W.2d 317, 318 (Tex. App.--Fort
Worth 1996, no writ); Vineyard v. Irvin, 855 S.W.2d 208, 210 (Tex. App.--Corpus Christi 1993,
no writ).

 We determine that the order denying Richard's application to serve as independent executor
was the determination of a substantial right and, as such, was a final and appealable order which we
have jurisdiction to review.

DISPOSITION OF FIRST THREE POINTS OF ERROR

 Richard's first three points of error maintain (1) that the trial court erred in finding that
Richard had refused to serve as executor or resigned as executor pursuant to Section 76 of the Texas
Probate Code; (2) that the trial court erred in finding that a waiver executed by Richard pursuant to
Section 37A of the Texas Probate Code barred Richard from appointment as executor; and (3) that
the trial court erred in finding that Richard had waived his right to appointment as executor by
signing the waiver. However, there is neither anything in the order signed by the trial court nor in
the findings of fact and conclusions of law which makes any of these findings. Rather, the trial court
found Richard as "unsuitable" to serve as independent executor and that appointment of him would
be "improper." Therefore, we overrule these points of error.

RULING ON UNSUITABILITY TO SERVE

 In determining the identity of persons who are disqualified to serve as executor or
administrator of an estate, Section 78(e) of the Texas Probate Code adds in the catch-all provision
that a person is disqualified to serve if the applicant for letters is "[a] person whom the court finds
unsuitable." Tex. Prob. Code Ann. § 78(e) (Vernon 2003). The term "unsuitable" is not defined. 

 Richard challenges the legal sufficiency of the evidence for the finding that he is unsuitable
to serve as executor of the estate. However, as in Zorilla v. Wahid, 83 S.W.3d 247, 252 n.1 (Tex.
App.--Corpus Christi 2002, no pet.), we follow the majority of courts in concluding that "when the
trial court's ruling on the merits is reviewed under an abuse of discretion standard, the normal
sufficiency of the evidence review is part of the abuse of discretion review and not an independent
ground for reversal." Id. (citing, e.g., Crawford v. Hope, 898 S.W.2d 937, 940-41 (Tex.
App.--Amarillo 1995, writ denied); Thomas v. Thomas, 895 S.W.2d 895, 898 (Tex. App.--Waco
1995, writ denied); In re Driver, 895 S.W.2d 875, 877 (Tex. App.--Texarkana 1995, no writ)); see
Handley v. Handley, 122 S.W.3d 904, 907 (Tex. App.--Corpus Christi 2003, no pet.) (division of
property reviewed for abuse of discretion). A court's ruling on a probate application is generally
reviewed under an abuse of discretion standard. See In re Estate of Robinson, 140 S.W.3d 801, 807
(Tex. App.--Corpus Christi 2004, pet. dism'd) (reviewing order finding person unsuitable to serve
as executor under an abuse of discretion standard); Olguin v. Jungman, 931 S.W.2d 607, 610 (Tex.
App.--San Antonio 1996, no writ) (reviewing order finding person unsuitable to serve as executor
under an abuse of discretion standard). The trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner without reference to any guiding rules or principles. Cire v. Cummings, 134
S.W.3d 835, 838-39 (Tex. 2004). The mere fact a trial judge may decide a matter within his
discretionary authority in a different manner than an appellate judge in a similar circumstance does
not demonstrate an abuse of discretion has occurred. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 242 (Tex. 1985). Under an abuse of discretion standard of review, we must make an
independent inquiry of the entire record to determine if the trial court abused its discretion and are
not limited to reviewing the sufficiency of the evidence to support the findings of fact made. See
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 853 (Tex. 1992) (orig. proceeding).

 The lack of a definition of "unsuitable" in the Probate Code leaves the implication that the
trial court has discretion in making that determination. In re Estate of Foster, 3 S.W.3d 49, 55 (Tex.
App.--Amarillo 1999, no pet.) ("[T]he cases considering the provision do not establish a 'bright line'
test to be applied in making that determination."). 

 Here, the trial court was presented substantial evidence regarding Richard's suitability to
serve as executor of the estate.

 Some of this evidence is found in the testimony of Dee; he said that Richard had told him that
it was Richard's intention while attorney-in-fact for Charles and Sarah to transfer all of their property
into his (Richard's) name. When Dee protested this, Richard responded that there was nothing Dee
could do to prevent it. Dee testified that on another occasion, Charles had been upset because he had
signed papers at Richard's request, but did not know what the documents were; as it developed, the
papers were a collateral pledge of Charles's $12,000.00 certificate of deposit to guarantee a loan for
Richard's daughter to purchase a house. In another incident, Dee discovered that Richard was
intending to sell a tract of 127 acres to Charles for $65,000.00. Dee protested that Charles neither
needed the property nor possessed the ability to even know how to locate it. Richard responded that
if Charles did not buy the land, he (Richard) would lose it through foreclosure. Richard continued
the personal use of the tract of land after the sale and the Borens subsequently deeded him forty acres
of it as a gift. 

 In addition, there was testimony from Randy Boren, Charles's nephew and one-time guardian. 
Randy testified that Richard had confiscated Charles's tools and equipment for his own use and that
while Randy was Charles's guardian, Richard had refused to provide records and receipts of his
activities as attorney-in-fact for Charles, a responsibility he held. (3) 

 When Parks assumed the guardianship of Charles, she discovered that Richard had not paid
the fees for Charles's nursing home care for some three months and that the account was some
$9,000.00 in arrears. Parks also discovered that during the period commencing on January 3, 2002
through December 31, 2004, there had been automatic teller machine withdrawals from Charles's
and Sarah's accounts totaling $5,271.75, despite the fact neither Charles nor Sarah knew how to use
an automatic teller machine. She found further discrepancies in that Richard had written checks over
that same period of time totaling $1,890.22 for fuel and "blank" checks for $38,015.21 in addition
to cash withdrawals amounting to $19,115.94. Despite the fact that Charles and Sarah owned no
livestock, there was $5,730.00 spent on cattle and $2,734.07 on tractor repairs, although Charles and
Sarah had no tractor. The implication was that Richard had both cattle and a tractor and that he had
converted these funds to his own use. Although Charles and Sarah had no outstanding notes upon
which to make payments, Richard wrote checks aggregating $5,521.71 with the notation that they
were for note payments. 

 Taking this testimony into account, there was evidence for the trial court to find Richard
unsuitable to be named as executor and that Richard had breached his fiduciary duty in his use of
power of attorney for Charles. The finding that Richard was unsuitable to serve as independent
executor was no abuse of discretion. Accordingly, we overrule Richard's fourth and fifth points of
error which challenge those findings. 

IS DISCLAIMER EFFECTIVE PURSUANT TO SECTION 37A OF THE TEXAS PROBATE
CODE?


 Richard's sixth point of error claims the trial court erred in finding the "waiver" (i.e.,
disclaimer) documents signed by Richard and Jeanetta were sufficient to constitute disclaimers of
interest by them to inheritance under the estate of Sarah pursuant to Section 37A of the Texas
Probate Code. The seventh point of error claims there was legally insufficient evidence to support
this finding. 

 We may sustain a legal sufficiency challenge only when (1) the record discloses a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact. Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003); Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998).

 The trial court's order found "that the Waivers filed by Richard and Jeanetta Finley were in
substantial compliance with Section 37A . . . . and that the clear language of the Waivers along with
the conversations Richard Finley had with other Boren family members evidenced a clear intent to
waive or disclaim their interest in either the Charles or Sarah E. Boren estates, by will, inheritance,
right of survivorship, or otherwise." The order went further to find that "the Waivers were not
ambiguous" and point out that Richard had the waivers reviewed by his attorney before signing; and
finally, found that "the Waivers were voluntarily executed." (4)

 As previously mentioned, the pertinent portion of the waivers signed by Richard and Jeanetta
said, "I hereby waive any interest or claim I have or may have in or against their [Charles's and
Sarah's] respective estates by will, inheritance, right of survivorship, or otherwise." 

 The documents were titled "Waiver of Service, Waiver of Interest, and Approval and Consent
to Sale of Real Property." Following the language quoted above, the documents went on to reflect
that the signors waived citation and service and did not object to guardian Parks's pending
application in the Charles Boren guardianship to sell real property. 

 The effect of a disclaimer under Section 37A of the Texas Probate Code is that the
disclaiming party is treated as having "predeceased the decedent." Tex. Prob. Code Ann. § 37A(c)
(Vernon Supp. 2008). Therefore, if the disclaimers signed by Richard and Jeanetta were effective,
the devises to them as contained in Sarah's will would lapse; neither Richard nor Jeanetta were
Sarah's lineal descendants and the will contained no other contingent beneficiaries. Therefore, if the
disclaimers were effective and operative, the only practical effect of the last will and testament of
Sarah would be to designate the appointment of an independent executor (or executrix) to serve
without bond; her assets would pass to all of her heirs-at-law.

 Section 37A(h) of the Texas Probate Code contains rather detailed requirements concerning
the filing of such waivers. As pertains to our circumstances in this case, a simplistic summary of the
requirement for filing a disclaimer dictates that if there is an action in probate pending on the
decedent, then the waivers are to be filed in that probate action; if there is no probate action pending
on the estate of the decedent (either because it was never instituted or because it had already been
closed), then the disclaimers were required to be filed "with the county clerk of the county in which
such real property or interest therein is located, and recorded by such county clerk in the deed records
of that county." Tex. Prob. Code Ann. § 37A(h) (Vernon Supp. 2008). The record does not reflect
that this was ever done; instead, they were filed among the papers of a guardianship whose ward had
died.

 On the same day that Sarah died, Richard and Jeanetta executed and filed instruments
revoking the disclaimers of inheritance they had previously given. 

 Section 37A(k) of the Texas Probate Code is the portion of the statute dealing with the
revocability of a disclaimer. It provides that, "Any disclaimer filed and served under this section
shall be irrevocable." Tex. Prob. Code Ann. § 37A(k) (Vernon Supp. 2008) (emphasis added).

 There is no evidence that filing requirement was ever met. Rather, they were filed in the
papers of the guardianship of Charles. Because Charles had died, the guardianship was, for most
purposes, no longer effective; the only power the person named as guardian had at that time was to
submit a final accounting and conclude the guardianship. See In re Guardianship of L.A. Moon, 216
S.W.3d 506, 510 (Tex. App.--Texarkana 2007, no pet.); In re Estate of Glass, 961 S.W.2d 461, 462
(Tex. App.--Houston [1st District] 1997, writ denied); see also Tex. Prob. Code Ann. § 745(a)(2)
(Vernon Supp. 2008). Therefore, the purported waivers were filed in a case file which had (so far
as any action other than closing the guardianship and dismissing the guardian) become moribund. 
On the same day that Sarah died, (5) Richard and Jeanetta filed revocations of these purported waivers. 

 Under the statute, once the proper filing and service of the disclaimer occurs, alea jacta est; (6)
it then becomes irrevocable. Because Richard and Jeanetta revoked their waivers before the waivers
signed by them had been properly filed, they were effectively revoked. Accordingly, despite the fact
that the form of the disclaimers was sufficient to satisfy the statute, irrespective of the intention they
held to disclaim inheritance under Sarah at the time they were signed, and regardless of their
expressed desires to heal the rift within the family, they were no longer operative after the revocation
occurred. 

 Accordingly, we reverse the implied order of the trial court that the disclaimer signed by
Richard effectively barred him from inheritance from Sarah and remand the cause to the trial court
for further proceedings. 





 Bailey C. Moseley

 Justice


Date Submitted: August 13, 2008

Date Decided: September 4, 2008

1. See Tex. Prob. Code Ann. § 485 (Vernon 2003).
2. There was no ruling on the admissibility of the will of Sarah for probate in the order and
there was no application for letters testamentary filed by Jeanetta.
3. An attorney-in-fact under a durable power of attorney has a duty to keep and maintain
records of its activities and to account for those activities. Tex. Prob. Code Ann. § 489 (Vernon
2003).
4. We note that the order makes no specific finding that they are barred from inheritance by
these waiver documents although one can infer that effect from the wording of the order. However,
since all of the parties take the position that this was the effect of the order, we indulge in that
inference. This inference cannot be extended to the interest of Jeanetta, however. Although she was
a witness in the hearing on Richard's application, there is nothing to show that she was made a party
to this action.
5. Although it was the same date, there is nothing to show whether this was done before or
after Sarah's death on that date. 
6. "The die is cast." (The phrase supposedly uttered by Caesar upon crossing the Rubicon
River with his army.)


interest
which would be affected by the declaration is mandatory, noncompliance with this mandate
does not uniformly constitute a jurisdictional defect. See Clear Lake City Water Auth. v.
Clear Lake Utils. Co., 549 S.W.2d 385, 389 (Tex. 1977). The trial court still retains its
discretion in determining joinder of parties, and nothing in the Act supersedes that
discretion. Tex. R. Civ. P. 39; MCZ, Inc. v. Smith, 707 S.W.2d 672, 675 (Tex.
App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.).
          Generally, when a minor is made a party to an action, such minor must be
personally served with process. See Am. Gen. Fire & Cas. Co. v. Vandewater, 907 S.W.2d
491, 492 (Tex. 1995). Under certain circumstances, joining minors as defendants through
their next friend is proper. See id.; Orange Grove Indep. Sch. Dist. v. Rivera, 679 S.W.2d
482, 483 (Tex. 1984). The Texas Supreme Court has established a test to determine
whether service on a guardian ad litem or other representative is sufficient. See
Vandewater, 907 S.W.2d at 492. An appellate court should evaluate whether the minor's
interests have been properly protected and whether a deficiency in notice or due process
has been shown. See id.
          The DeWitts concede Brenham Shore was not personally served. They contend
personal service on the minor was not necessary because his father appeared as next
friend and as guardian ad litem. We need not determine whether service on Shore as
either next friend of or guardian ad litem for Brenham Shore is sufficient because the
record does not establish that Shore appeared in either capacity. The record contains no
order appointing Shore as Brenham Shore's guardian ad litem. See Tex. R. Civ. P. 173. 
Further, the only evidence before us that might indicate Shore appeared as next friend is
the DeWitts' own application for partition and distribution, which listed as an interested
party "WILLIAM R. SHORE, Jr. Individually and as Guardian ad litem and next friend of
BRENHAM SHORE C/O CLAY WILDER, ATTORNEY AT LAW." The judgment reflects
this same position. This is insufficient to establish that Shore appeared as next friend of
Brenham Shore. We conclude the DeWitts failed to join the minor Shore as a party to the
action.
          Generally, failure to join a party for just adjudication should be raised by a verified
plea in abatement. Tex. R. Civ. P. 93(4); Jones v. LaFargue, 758 S.W.2d 320, 324 (Tex.
App.–Houston [14th Dist.] 1988, writ denied). Because jurisdiction is considered
fundamental, raising the issue does not demand compliance with the usual requirements
of preservation of error or briefing of the point and argument. See Simpson v. Afton Oaks
Civic Club, Inc., No. 06-02-00102-CV, 2003 Tex. App. LEXIS 7896, at *5 (Tex.
App.–Texarkana Sept. 10, 2003, pet. filed); Nuchia v. Woodruff, 956 S.W.2d 612, 616
(Tex. App.–Houston [14th Dist.] 1997, pet. denied). Shore's failure to raise the trial court's
subject matter jurisdiction under the UDJA at trial or in his motion for new trial did not waive
the issue on appeal since the question presented involves jurisdiction.
          A party's absence will rarely deprive the court of jurisdiction to adjudicate the dispute
between the parties before it. Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982); Cooper
v. Tex. Gulf Indus., 513 S.W.2d 200, 204 (Tex. 1974). In determining whether a particular
party is indispensable to a declaratory judgment action, we must examine surrounding
facts and circumstances of the case to determine if the interests of an absent party will be
prejudiced and if an adequate judgment can be rendered for the parties before the court. 
Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a); Sage St. Assocs. v. Fed. Ins. Co., 43
S.W.3d 100, 104 (Tex. App.–Houston [1st Dist.] 2001, pet. denied).
          We cannot say Brenham Shore's interest was not prejudiced by the judgment. In
fact, his remainder interest under the will was extinguished by the trial court's construction
of the will. We recognize that Brenham Shore's interest under the will is consistent with
that of his father, i.e., however goes Shore's interest, so goes that of Brenham Shore. It
appears, at first glance, this consistency might allow a court to render an adequate
judgment for the parties to the action before it. However, even if we concluded the trial
court had jurisdiction to order declaratory relief, the judgment would not affect the minor
Shore's interest. Brenham Shore, then, could relitigate the matter and undermine the
finality of the original judgment entered as to the other parties. The position of the parties
to the original litigation could be affected by the litigation that might, and likely would,
follow. That being said, we hold that, without joining Brenham Shore, an adequate
judgment could not have been rendered for the parties before the court. 
          We sustain Shore's contention that the failure to personally serve citation on
Brenham Shore deprived the trial court of jurisdiction to enter the declaratory judgment.
Summary and Conclusion
          We hold that, even though a trial court is not divested of jurisdiction to construe a
will under the UDJA merely because an independent executor has been appointed, the trial
court in this case lacked jurisdiction to render the partition and distribution order because
twenty-four months had not passed since the appointment of an executor of Bean's estate. 
We hold the court was further without jurisdiction to render a declaratory judgment because
Brenham Shore was a necessary party to the action and was not joined. 
          Because we have determined the trial court did not have jurisdiction, this Court does
not have jurisdiction, and we do not reach Shore's remaining contentions that the trial court
applied an improper legal standard in its construction of Bean's will and that the evidence
is legally insufficient to support the judgment. 
          We dismiss the appeal without prejudice.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 2, 2003
Date Decided:         November 14, 2003