

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00133-CV

_____

IN THE ESTATE OF ERIC JOHNSON, DECEASED

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2019-PR01490-2

Before Wallach and Walker, JJ.; and Lee Gabriel (Senior Justice, Retired,
Sitting by Assignment)
Memorandum Opinion by Justice Gabriel

# MEMORANDUM OPINION

Eric Stalin Edowu Johnson's (Eric) last will and testament named his son, Sesin Arthur Johnson (Sesin), as Independent Executor of his estate. Eric's wife and Sesin's mother, Edwina-Jane Johnson (Jane), filed an "Opposition to Appointment of Independent Executor."[1] Following a hearing and based upon the consent of both parties, the court signed an order admitting the will to probate and authorizing letters testamentary.[2] In written findings of fact and conclusions of law, the trial court found that Sesin was "unsuitable" to serve as independent executor of the estate. In a single issue, Sesin argues that the evidence is legally and factually insufficient to support the judgment of the court.

## I. BACKGROUND

Eric passed away on April 10, 2019. At the time of his death, Eric was married to Jane for a second time. They had been married to each other previously and divorced in approximately 1999. In 2014, Eric and Jane remarried. Eric and Jane had three children—Sesin, Delin, and Janelin—who were the only children of both parents.

---

[1] Jane's only complaint was that "Sesin Johnson is disqualified to serve as Independent Executor of this Estate." There was no stated reason as to why he was disqualified.

[2] At the hearing, Jane's attorney stipulated that the will should be admitted to probate. He explained that his analysis showed that Jane "comes away much – she comes away slightly better under the will." He acknowledged that Jane was not contesting the will but was "distrustful of this particular individual."

At the hearing on Jane's motion, Sesin and Janelin were the only witnesses who testified and the testimony totaled fifty-five pages.[3] Sesin testified that Eric had suffered from multiple conditions including cardiac amyloidosis and was hospitalized for months before his death. Towards the end of his life, Eric was moved to his home in Fort Worth where he was under home hospice care. Sesin came to Fort Worth from his home out of state and stayed to care for his father when Eric was moved home. The three siblings communicated extensively through group text messages.[4] Sesin furnished over 300 pages of those text messages in response to Jane's first request for production. The texts, which began on July 19, 2018, and ended April 30, 2019, were admitted into evidence. The texts reflected there was a great deal of conflict between the siblings and their mother which only worsened when Eric went home.

The undisputed testimony at the hearing was that Sesin was not incapacitated, had not been convicted of a felony, and had appointed a resident agent to accept service of process in all actions or proceedings with respect to the estate. *See* Tex. Est. Code Ann. § 304.003. The testimony did show that Sesin removed property from one of the homes owned by one or both of his parents, administered morphine to his

---

[3]Janelin testified that she did not object to Sesin's serving as executor of their father's estate.

[4]Some of the text conversations included all three siblings, while at other times, only two were participating.

father, and borrowed $149,000 from his father—all while Eric was hospitalized or under hospice care.

The testimony and exhibits discussed three residences owned by Eric, Jane, or both. There were homes in Fort Worth, Arkansas, and Georgia. Sesin testified that the real property in Fort Worth was purchased by his father while his parents were divorced. Eric's will provided that the home in Fort Worth was devised only to his three children in equal shares. The testimony also reflected that Eric bought the home in Arkansas in 2012, before Eric and Jane remarried. The will provided that the Arkansas property was left to Jane and the three children in equal shares. A deed introduced into evidence reflected that Jane alone purchased a home in Georgia in 2016. The will made no reference to the property in Georgia.[5]

Sesin testified that after Jane filed her opposition to his appointment as independent executor, she called the police in Arkansas to report that Sesin and Janelin had committed a crime by removing property from the Arkansas house. Sesin testified that he did in fact remove certain furniture items from that home to prepare the home for sale. He testified that he did this while his father was alive and that the plan to remove the property to prepare the home for sale was not his idea. He

---

[5]It is uncontested that the will that was offered into evidence and admitted to probate was an amended will Eric signed on April 3, 2019—one week before his death. The uncontroverted testimony was that the only change to the amended will was to correct an error to include Jane in Section 2.06 as a beneficiary of royalties or other monies for patents that Eric owned. Sesin testified that he was named as the independent executor in both wills his father signed.

explained that he had the items shipped to his home and that he always understood that his mother was to receive whatever items she wanted. He testified that he took pictures of the furniture and sent them to his mother. He told her to let him know what she wanted and where she wanted it delivered. Sesin also affirmed that there were never any charges filed and that he was still waiting for his mother to tell him where to send the furniture.

Both the testimony and the myriad of text messages showed that the three children took part in caring for their father while he was hospitalized and at home under hospice care. The testimony showed that Sesin came to the Fort Worth home when Eric was moved there specifically to assist in his care. When Eric first arrived home on March 11, the three siblings became very concerned about the care their mother wanted to provide their father. Their concern was heightened by the fact that Jane had the power of attorney to make medical decisions for Eric. In texts between the siblings immediately after Eric went into hospice care at home, Delin told his brother and sister that the hospice workers explained that oxygen would be provided and that Eric said he wanted the oxygen to be more comfortable. Jane said he did not need it. The texts went on to say that Jane also did not want Eric to receive morphine, and she asked the nurses if she could override Eric's wishes. The text messages unquestionably showed that Sesin, Janelin, and Delin discussed a plan to get their father to give them the power to make his medical decisions and that they hoped to accomplish this without Jane's knowledge. The texts reflected the sibling's efforts

5

to get a notary to the home when Jane was not present. The texts also state that once the change was made, Delin was proud of his mother for taking it well and everyone was in good spirits. The testimony of both Sesin and Janelin related that Eric wanted to make the change to designate his children as the parties with the right to make his healthcare decisions and that although Sesin had assumed that role for a period of time, Janelin was making those decisions at the time of Eric's death.

Since Sesin was the son providing care for Eric while he was in hospice care, he was trained in performing certain tasks that hospice provided to give comfort to Eric. These included administering morphine on a regular basis under the hospice guidelines to soothe his pain. During the time Sesin was performing these tasks, he asked his father for a loan for his business.[6] Both Sesin and Janelin testified that Eric wanted to make this loan to Sesin out of an account that was divided by the will between the three children only. The loan was made after March 19, 2019, which was within a month of Eric's death. Eric, Sesin, and Janelin all went to Bank of America to obtain the funds. Sesin related that when Jane found out about the loan, she was upset with him and her husband. Sesin testified that Eric passed away soon after the loan was made and that since he had that money, he used $70,000 of the loan

---

[6]The trial court made a finding of fact that "the Applicant may have told the Decedent [the loan] was to save his house." Sesin was asked repeatedly if he had told his father or mother that "if [he] didn't get the loan, [he was] going to lose [his] house[.]" He repeatedly denied he said that, and there was no evidence offered to support that theory.

proceeds on his father's funeral. He further testified that he and his siblings agreed on how to split the funeral expenses between the three of them and how to account for Sesin's repayment of the loan. They worked out the division of the account proceeds provided by the will.[7] Jane did not pay for any of the funeral expenses.

During the cross-examination of Sesin, Jane's attorney questioned him about the loan he obtained from his father during the same time period he was administering morphine to Eric for his pain. He also questioned Sesin about why and how a change in the will happened. Jane's attorney explored what Sesin's duties would be if he were to serve as independent executor of the estate. He inquired about the Fort Worth home on Medinah Street that was bought solely by Eric and bequeathed to his three children. Counsel opined that Jane's homestead interest gave her the right to use and occupy the home on Medinah for the rest of her life. Sesin responded he understood that and was willing to abide by that. Counsel for Jane also asked a question concerning whether Sesin would pursue litigation against Jane to recover the house in Georgia if the evidence proved it was her separate property.

---

[7]Sesin explained that the funds for his loan came from the Teachers Insurance and Annuity Association of America-College Retirement Equities Fund (TIAA). He understood that he was to repay the loan into that account. Section 2.05 of Eric's will made a specific distribution to his three children of the funds in that account. But Jane was a beneficiary on that account, and the account funds were divided four ways before the $79,000 remaining balance on the loan was paid back and before the will was admitted to probate. Despite the will provision, Jane received $70,000 from the TIAA account. After accounting for their split of the funeral expenses and the repayment of the loan, Sesin's siblings received about $53,000. Neither Delin nor Janelin contested the distribution of the funds from the TIAA account.

Sesin did not answer that question because an objection was sustained by the trial court.

At the conclusion of the hearing held on January 28, 2020, the trial court orally admitted the will to probate and took under advisement the issue of whether Sesin was qualified to serve as independent executor. Three days later, the court signed an order admitting the will to probate, authorizing letters testamentary, and finding that Sesin was not qualified to serve as independent executor. Sesin filed a motion for new trial on March 2, 2020. Sesin filed a request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law. The trial court made findings of fact and conclusions of law, which were filed on March 23, 2020. Sesin brought this appeal on April 28, 2020. On May 14, 2020, Sesin and Jane filed a joint amended motion for new trial and a Rule 11 agreement for settlement signed by both parties and their attorneys as well as Delin and his attorney and Janelin. All parties requested that the court vacate the January 31, 2020 judgment and approve the Rule 11 agreement. The court did not sign an order on the motion before the court's plenary power expired. *See* Tex. R. Civ. P. 329b(c), (e).

The findings of fact most relevant to the sole issue in this case are as follows:

7. Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON filed an appointment of registered agent naming a Texas resident as his agent.

8. Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON has never been convicted of a felony.

8

9.  Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON has never been found incompetent by a court of law.

10.  Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON has been questioned by the Arkansas police regarding property taken from the residence owned by the Decedent (while he was alive) and Jane Johnson.

11.  Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON is still in possession of the property.

12.  Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON owns an IT firm and has a few employees.  The business grosses approximately $200,000.00.

13.  Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON received a loan for $149,000.00 from the Decedent last year.

14.  There is evidence the loan was for the Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON to procure a government contract, but that the Applicant may have told the Decedent it was to save his house.

15.  The Decedent was ill and taking morphine when the Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON requested the loan at or around March 19, 2019.

16.  The Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON, was administering the morphine to the Decedent.

. . . .

20.  Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON paid for the Decedent's funeral in an amount of approximately $70,000.

21.  The loan from Decedent (now an asset or claim of the Estate) to Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON is still outstanding.

22.  It is unclear if the Estate has any interest in the real property located in Georgia.

9

23. There may be a homestead interest of JANE JOHNSON, a/k/a EDWINA-JANE JOHNSON in the real property located in Fort Worth.

24. There is discord in the Decedent's family and Contestant, JANE JOHNSON, a/k/a EDWINA-JANE JOHNSON who is the mother of the Applicant SESIN JOHNSON a/k/a SESIN ARTHUR JOHNSON, and the surviving spouse and a devisee under the Decedent's Will, was opposed to the appointment of her son, the Applicant, as Independent Executor.

25. Testimony by the Applicant raised doubts about the Applicant's trustworthiness.

. . . .

30. During the same March 19, 2019, timeframe of Applicant obtaining a loan of $149,000 from the Decedent, Applicant was administering morphine to Decedent.

31. Applicant SESIN JOHNSON, a/k/a SESIN ARTHUR JOHNSON, is a person who is unsuitable to serve as Independent Executor of the Estate.

The court made the following conclusions of law:

1. Both the Applicant SESIN JOHNSON, a/k/a SESIN ARTHUR JOHNSON, and the Contestant, JANE JOHNSON, a/k/a EDWINA-JANE JOHNSON, consented to the admission of the Will to probate and all proof required for the admission to probate. All proof needed was proved and the Will was entitled to and admitted to probate.

2. Applicant SESIN JOHNSON, a/k/a SESIN ARTHUR JOHNSON, is not qualified to serve as Independent Executor of this Estate pursuant to Texas Estates Code Section 304.003(5), as the Court finds SESIN JOHNSON, a/k/a SESIN ARTHUR JOHNSON is unsuitable.

## II. DISCUSSION

Sesin's single issue challenges the legal and factual sufficiency of the evidence to support the trial court's judgment that he was unsuitable to serve as independent executor of Eric's estate. A probate court's order finding a person is unsuitable to serve as executor is reviewed under an abuse-of-discretion standard. *In re Estate of Boren*, 268 S.W.3d 841, 846 (Tex. App.—Texarkana 2008, no pet.) (op. on reh'g); *In re Estate of Vigen,* 970 S.W.2d 597, 600 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.); *Olguin v. Jungman*, 931 S.W.2d 607, 610 (Tex. App.—San Antonio 1996, no writ). When applying an abuse-of-discretion standard, the normal sufficiency-of-the-evidence review is part of the abuse-of-discretion review and not an independent ground for reversal. *In re Estate of Boren*, 268 S.W.3d at 846. The probate court abuses its discretion if its actions are unreasonable or arbitrary or without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *In re Guardianship of Bayne*, 171 S.W.3d 232, 235 (Tex. App.—Dallas 2005, pet. denied). "Under an abuse of discretion standard of review, we must make an independent inquiry of the entire record to determine if the trial court abused its discretion and are not limited to reviewing the sufficiency of the evidence to support the findings of fact made." *In re Estate of Clark*, 198 S.W.3d 273, 275 (Tex. App.—Dallas 2006, pet. denied) (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex. 1992) (orig. proceeding)).

11

The Estates Code provides the priority order of persons qualified to serve as a personal representative to an executor named in a will. *See* Tex. Est. Code Ann. § 304.001(a)(1). The Estates Code also deems certain persons statutorily disqualified to serve as an executor, including a "person whom the court finds unsuitable." *See id.* § 304.003(5). When the applicant is among those named in the Estates Code as a person entitled to priority, as in this instance, the party opposing the appointment has the burden of establishing the applicant's disqualification. *In re Estate of Robinson*, 140 S.W.3d 801, 805 (Tex. App.—Corpus Christi–Edinburg 2004, pet. dism'd). Jane had the burden of establishing that Sesin was unsuitable to be appointed independent executor of Eric's estate.

Unsuitability is not defined in the Estates Code, and case law has not delineated any comprehensive, discrete explanation of the attributes that make someone unsuitable. "It would appear, therefore, that the legislature intended for the trial court to have wide latitude in determining who would be appropriate for the purpose of administering estates." *Brittingham Sada de Ayala v. Mackie*, 158 S.W.3d 568, 572 (Tex. App.—San Antonio 2005, pet. denied) (quoting *Dean v. Getz*, 970 S.W.2d 629, 633 (Tex. App.—Tyler 1998, no pet.)).

Sesin attacks the legal sufficiency of an adverse finding on an issue in which he did not have the burden of proof. To prevail, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Wichita Cty. v. Hart*, 989 S.W.2d 2, 6 (Tex. App.—Fort Worth 1999,

12

pet. denied). He also challenges the factual sufficiency of the evidence. In our review of this challenge, we consider all the evidence to determine if he demonstrates that the evidence is insufficient to support the adverse finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Croucher*, 660 S.W.2d at 58.

To conclude that Jane met her burden, we must find that happened through the exhibits admitted into evidence or through the testimony of Sesin and Janelin, since Jane did not testify or call witnesses. "In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *In re Estate of Turner*, 265 S.W.3d 709, 714–15 (Tex. App.—Eastland 2008, no pet.). The trial court found that Sesin's own testimony raised doubts about his trustworthiness. The evidence showed that Sesin took property from a home in Arkansas and was questioned by the police concerning that property, which remained in the possession of Sesin at the time of trial. On direct, Sesin testified that he received a loan for his business from Eric in January or February. The text messages and the cross-examination actually showed that the loan was obtained at some point after March 19—less than a month before Eric's death. Sesin's testimony was that Eric was terminally ill at the time he requested the loan and that it was necessary for Eric to accompany him and Janelin to the bank to get the bank to release the funds. Sesin was administering morphine, when requested by Eric, during this same time period. The text messages also show that the siblings were all involved in facilitating the change in Eric's power of attorney in a manner

13

that would insure that Jane had no advance notice. On cross-examination, Sesin was also asked questions about the fiduciary duty of an executor that required "high trust and responsibility." Jane's counsel followed that with questions concerning how Sesin would treat interests Jane might have in two houses owned by Eric, Jane, or both. Under the will, Jane had no claim to the Fort Worth property. Sesin testified that when Jane first read the will that was later offered into probate, Jane asked Eric to leave her the house in Fort Worth. Sesin recounted that Eric "adamantly denied her and said that was for his children." While the Georgia property was not specifically addressed in the will, a residual clause disposed of the residue of Eric's estate equally between Jane and the three children.

We find that the probate court did not abuse its discretion in finding Sesin was not qualified to act as executor. "It is of no consequence that we, or any other court, would decide this issue differently so long as the matter to be decided is within the discretion of the probate court." *Spies v. Milner*, 928 S.W.2d 317, 319 (Tex. App.—Fort Worth 1996, no writ). The evidence showed there was substantial discord between Sesin and Jane, and the trial court made that specific finding.[8] When a claim against the estate is controversial, the trial court is within its discretion to evaluate

_____

[8]Sesin argues that the fact that the parties were able to later reach a Rule 11 agreement to settle their differences is evidence that there is not family discord. The Rule 11 agreement was not before the court at the time it found that Sesin was unsuitable to serve as executor, and therefore the Rule 11 agreement cannot be considered or given any weight as to the judgment's merit. *See Advert. Displays, Inc. v. Cote*, 732 S.W.2d 360, 363 (Tex. App.—Houston [14th Dist.] 1987, no writ).

14

whether the claim against the estate presents such a conflict that the executor, who is also a claimant, is not suitable to act as an administrator. *See In re Estate of Vigen*, 970 S.W.2d at 601; *Beevers v. Lampkins*, No. 07-11-0021-CV, 2012 WL 1520432, at *5 (Tex. App.—Amarillo May 1, 2012, no pet.) (mem. op.). There is also some evidence to support the trial court's finding of doubt as to Sesin's trustworthiness due to inconsistencies in his testimony concerning the loan and due to the surreptitious manner in which he and his siblings operated to get Eric to make changes to important legal documents without Jane's knowledge. Because this is some evidence that Sesin pursued his own self-interests over the interests of Jane, the trial court's determination that Sesin was unfit to serve as executor was neither arbitrary, nor unreasonable, nor made without reference to guiding principles. *See In re Estate of Vigen*, 970 S.W.2d at 601. We find that there is more than a scintilla of evidence that Sesin had a substantial conflict of interest with Jane and that considering all the evidence, the trial court's finding was not clearly wrong or manifestly unjust. *See Formby v. Bradley*, 695 S.W.2d 782, 784–85 (Tex. App.—Tyler 1985, writ ref'd n.r.e.). Sesin's single issue is overruled.

15

### III.  CONCLUSION

Having overruled Sesin's sole issue, we affirm the judgment of the trial court.


/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered:  August 26, 2021